LEANDER HUTCHINS *et al. v.* GEORGE W. MOODY.

*Taxes. Covenant against incumbrances. Non-resident proprietors.*

Taxes become a fixed incumbrance upon the land upon which they are assessed as soon as the officer, having their collection in charge, proceeds officially so far as to manifest his intention to pursue the land for the purpose of enforcing the collection of the taxes.

In the case of a non-resident proprietor, taxes become an incumbrance upon the land when the constable has, in accordance with sec. 24, chap. 81, of the Compiled Statutes, made a list of the land and the taxes assessed thereon, and deposited the same in the town clerk's office for record.

The land of H. then a resident of Vermont, was set in his grand list, after which he removed from this state, as it was generally supposed, to remain permanently absent, and left no personal property here: *Held,* that notwithstanding his return, in a short time afterwards, to another part of the state, the constable, having charge of the collection of the taxes assessed against him on such list, was justified in treating him as a " non-resident proprietor," and proceeding accordingly in the sale of the land for the taxes, provided he was not aware of the return of H. to the state, and the circumstances were not such as reasonably to put him on inquiry respecting such return.

This was an action of covenant broken. The declaration alleged that the defendant, on the 12th of May, 1853, conveyed to the plaintiffs a certain piece of land in Waterbury, and in his deed covenanted that the premises were free from all incumbrances; that Oramel Howe was the owner of the land on the 1st of April, 1853, at which time it was set to him in the grand list of that town ; that certain school, town and state taxes were assessed against Howe on the land in question, as set in the list of 1853, in that year and after the 1st of April; that Howe neglected and refused to pay these taxes, and that the constable of Waterbury sold the land at public vendue for the payment thereof; and that the plaintiffs were compelled to pay a large sum of money for the redemption of the land after such sale.

The defendant pleaded that he had not broken his covenant, and the cause was tried by the court, at the March term, 1860, BARRETT, J., presiding.

The plaintiffs read in evidence the deed from the defendant to them, which was as set forth in the declaration. It was con-
29

ceded by the defendant that Oramel Howe held the title to, and was in posseesion of, the property described in said deed, on the first day of April, 1853, and that the same was lawfully set to Howe in the list of that year.

The plaintiffs also proved the regular assessment against Howe of the several taxes described in the declaration, on his grand list for 1853, and the due delivery of the tax bill containing the town, state and state school taxes in question, to one Brown, the first constable of Waterbury for the years 1853, 1854 and 1855, for collection. The school district taxes described in the declaration were regularly assessed against Howe in 1853, and the rate bills were handed by the district collector to Brown for collection in July, 1854, but the collector did not deposit with the constable, Brown, any list of the land upon which such taxes remained unpaid together with the amount of tax due thereon, as required by sec. 24, chap. 81, p. 466, Compiled Statutes.

It was proved that Howe conveyed the premises in question, on the 22d of April, 1853, to one Wells, and thereupon broke up housekeeping and went with his family to Pennsylvania, and remained there till the December following, when he returned to Berkshire, in this state, where he remained till April, 1856 ; that he left no personal property in Waterbury, and had none in the state after his removal from Waterbury ; that the constable, Brown, after Howe went to Pennsylvania, had no knowledge of his return to Vermont, but supposed that he had permanently left the state ; and it did not appear that any person in Waterbury, except Mr. Dillingham, one of the defendant's counsel, knew that Howe had returned from Pennsylvania, and was in Berkshire, as above stated.

The plaintiffs also introduced in evidence the following copy of a record in the town clerk's office in Waterbury, viz :

" NOTICE.—Sale of non-residents' lands for taxes. The non-resident proprietors of the town of Waterbury, in the county of Washington, are hereby notified that the taxes assessed by the general assembly of the state of Vermont, by the said town of Waterbury, and by school district No. one in said Waterbury, on the grand lists of 1851 to 1855 inclusive, remain either in whole

or in part unpaid on the following described lands in said town, to wit :"

(Then followed a description of the land in question, together with certain other pieces of land on which the taxes remained unpaid, and the record proceeded thus :)

"And so much of said lands will be sold at public auction at the dwelling house of C. C. Parker, in Waterbury village, on Wednesday the 17th of October next, at nine o'clock in the forenoon, as shall be requisite to discharge said taxes with costs, unless previously paid.

Waterbury, September 6th, 1855.

I. C. BROWN, 1st Constable."

"List of Oramel Howe's taxes in Waterbury, District No. 1.

| | |
|---|---|
| On grand list of 1853,...................... .. | 11 88 |
| State tax on grand list of 1853,................ | 1 52 |
| State school tax,.... .. .... . ...... ..... .... | 48 |
| Town,...... ,................ ,............... | 2 38 |
| | $16 26" |

(Then followed a list of the other delinquent taxes.)

"I hereby certify that the above is a true list of taxes now due on tax bills in my hands, the first of August last. '

Attest, I. C. BROWN, 1st Constable."

"September 6, 1855, at noon, received and recorded this instrument.

JNO. D. SMITH, Town Clerk."

"I hereby certify that the within notice was published in the *Green Mountain Freeman*, a paper printed at Montpelier, in the same county where the premises within described lie, for three weeks, in accordance with the law to that effect.

Attest, JNO. D. SMITH,
Town Clerk of Waterbury.

Waterbury, October 19, 1855."

The plaintiffs further proved that in pursuance of the notice above recited, Brown sold the premises in question, and that one Stimpson, one of the plaintiffs, bid them off for the amount of the taxes due thereon and the costs of the notice, sale, etc. The record of such sale was also proved, as was likewise the fact of

Hutchins et al. *v.* Moody.

the advertisement of the constable's notice of sale in the *Green Mountain Freeman.*

Upon these facts the county court rendered judgment for the defendant, to which the plaintiffs excepted.

*O. H. Smith* and *T. P. Redfield,* for the plaintiffs.

*Dillingham & Durant,* for the defendant.

KELLOGG, J. When this case was before this court on a former occasion, (30 Vt. 655,) it was held that the fact that real estate was set in the grand list, on the first day of April preceeding its conveyance to its then owner, and that taxes were voted and assessed upon it against him after the conveyance, did not constitute a breach of the covenant against incumbrances in a deed conveying it until such taxes became legally fixed upon it so as to be a definite burden upon the estate which the grantee might properly remove by payment; and that such taxes could not be legally fixed upon the estate until the preliminary remedies against the goods and chattels, or the body, of the person against whom the taxes were assessed had been exhausted; and that when the taxes thus became legally fixed upon the estate, the burden would properly be referred to, and date from, the time of the date of the list. ) The lien upon real estate for the taxes assessed thereon is created by the statute, (Comp. Stat. p. 452, secs. 10, 12,) and the question now presented is, whether, on the facts stated in the case, the taxes mentioned in the plaintiffs' declaration became legally fixed upon the land, so as to justify a subsequent owner in treating them as a fixed and definite incumbrance upon it.

It appears that, on the 1st April, 1853, Oramel Howe owned and was in possession of the real estate conveyed by the defendant to the plaintiffs,—the same being situated in the town of Waterbury,—and that it was lawfully set in the list of that town in that year to said Howe; that a state tax, a state school tax, and a town tax were legally voted and assessed on that list; that I. C. Brown was the first constable and collector of taxes of that town during the years 1853, 1854 and 1855, and that

Hutchins et al. v. Moody.

legal rate bills with the proper warrants for the collection of the said taxes were duly made and delivered to the said Brown as such collector, but not until after the removal of Howe from the state. On the 22d April, 1853, Howe conveyed the premises to William W. Wells, and broke up housekeeeping in Waterbury, and with his family went to the state of Pennsylvania, and remained there until December following, when he returned to Berkshire in this state, and there remained until April 1856 ; that he left no personal property in Waterbury, and had none in this state after his removal from Waterbury ; and that the said Brown, after Howe left this state, did not know that he had returned into the state during that time, but supposed that he had left, and continued permanently out of the state ; and it did not appear that any person in Waterbury, except Mr. Dillingham, one of the counsel for the defendant, knew that Howe had returned from Pennsylvania into this state, and was in Berkshire, as above stated. On the 6th September, 1855, Brown, the first constable, made and deposited in the town clerk's office for record a statement of the lands of the non-resident proprietors of the town of Waterbury, and of the unpaid taxes thereon, including therein the land conveyed by the defendant to the plaintiffs and the said taxes assessed against Howe thereon, with certain taxes thereon duly voted and assessed by school district No. 1 in that town on the same list,—the said land being situated in that school district,—and advertised the said lands for sale on the 17th October following, for the payment of the said taxes with costs, by publication in a newspaper as required by the statute ; and afterwards, at the time and place appointed for the sale, sold the land so conveyed by the defendant to the plaintiffs to Joel G. Stimpson, one of the plaintiffs, for twenty dollars, which sum was the amount of all of said taxes on said land against Howe as above mentioned, with the officer's fees for the collection of the same in the manner aforesaid ; and this sum was paid by Stimpson to the constable and duly applied in payment of said taxes and fees.

The plaintiffs' right to recover depends, not upon the fact that the land was sold by the constable, but upon the fact that the incumbrance of the taxes became so fixed upon the estate that they, as subsequent owners, would be justified in removing it by

payment. To make the lien for taxes a fixed incumbrance upon the land, we consider that it is sufficient that the officer should, by some official act, proceed so far as to indicate or manifest his intention to pursue the land for the purpose of enforcing the collection of the taxes agreeably to the provisions of the statute. When the officer has thus indicated his intention to pursue the land, the owner of the land would be justified in treating the lien for the taxes as a fixed incumbrance, and in discharging it by payment; and though the officer's subsequent proceedings should be wholly irregular and defective, this would not affect the right of the owner of the land to discharge the lien after it became a fixed and definite incumbrance upon the estate. When there is no mode of collecting the tax by a resort to the goods and chattels, or the body of the person to whom the land was assessed in the list, the officer is authorized to enforce the lien of the taxes on the land by selling the land agreeably to the provisions of the statute, but neither the assessing or placing of the property in the list, nor the vote laying a tax on the list, are sufficient, without some further proceeding, to charge the land with the incumbrance of the tax.

The land was properly set in the list to Howe, and the taxes appear to have been legally voted and assessed on the list. Was Howe, at the time when the officer commenced his proceedings for the purpose of selling the land for the payment of the taxes, a "non-resident proprietor" within the meaning of the statute? He had, shortly after the making up of the list, and before any of the tax bills for the collection of the taxes on the list were delivered to the collector, removed to a distant state, and though he subsequently returned, and was in fact within this state at the time of the proceedings of the constable for the collection of the taxes by the sale of the land, yet we find nothing in the case tending to show that the officer holding the tax bills would by the exercise of reasonable diligence have obtained any information in respect to his return. In view of the notoriety in the place of Howe's former residence of the fact of his removal from the state, we think that the constable would be justified in presuming that his residence was without this state, and especially when his change of residence had been so recent, in the absence of any information in respect to his return to the state. A

return to the state by Howe, and a residence in another town within it, remote from the place of his former residence in it, would not, as we think, entitle him to be treated by the collector of taxes of the town of his previous residence as a resident within the jurisdiction of such collector for the collection of taxes, unless the circumstances of the case were such as to affect the collector with notice or information of such return to the state, so that there would be a reason for making an inquiry in respect to his change of residence.

The constable, therefore, was authorized to enforce the collection of the taxes against Howe by proceeding agreeably to the statute provisions, to sell the land on which the same were assessed as the land of a "non-resident proprietor;" and we regard the act of the constable in making out a list of the lands and of the taxes against Howe thereon, and depositing the same in the town clerk's office for record, as a substantial compliance with those provisions (Comp. Stat. p. 466, sec. 26, *et seq.*,) so far as such a compliance was necessary to distinctly manifest his intention to pursue the lien upon the land for the collection of the taxes. This, as we think, was all that was requisite to make the lien for the taxes a fixed and definite incumbrance upon the land. But this lien could not be pursued or made available for any other taxes than those which the constable was authorized to collect; and in respect to the school district taxes assessed against Howe on the same list, it is clear, on the facts found by the court, that there was no such compliance by the school district collectors with the provisions of the statute (Comp Stat., p. 466, sec. 24,) as would lay a foundation for, or justify, any proceedings on the part of the constable for the collection of those taxes. The state school, state, and town taxes stand on a different footing, and the constable being authorized to pursue any statute remedy for the purpose of collecting the same, they and this incumbrance, as has been heretofore decided in this case, is to be referred to the time of the date of the list. When the incumbrance became fixed upon the estate, the owner became entitled to discharge it by payment.

Judgment of the county court for the defendant reversed, and the case remanded for a new trial.