## William Smith v. Zina Lloyd.

*Covenant against incumbrances : Evidence : Res gestæ.* In an action upon a covenant against incumbrances, which excepts a certain mortgage of seven thousand three hundred dollars, subject to which the deed is given, where the recovery sought is the amount of accrued interest due on said mortgage at the date of the deed, evidence that the purchase price of the land conveyed was fourteen thousand dollars, that two thousand dollars was paid in cash, and a mortgage of four thousand seven hundred dollars given back, and that the plaintiff took subject to the mortgage in question of seven thousand three hundred dollars, is admissible as part of the *res gestæ.*

*Covenant: Declaration : Evidence.* Under such evidence, however, the plaintiff could not recover upon a count for the whole amount of the incumbrance created by such mortgage.

*Covenant against incumbrances : Exception : Amount : Guaranty.* A construction of the covenant in question, holding that the sum mentioned is to be considered as matter of description only, inserted for the purpose of identifying the mortgage, and that the covenant cannot be considered as a guaranty that the sum mentioned constituted the whole amount of the mortgage incumbrance, is held to be erroneous.

*Deeds : Covenants : Grantors.* Where the covenants in a deed are introduced by this language: "and the said parties of the first part for their heirs, executors and administrators do covenant," etc., it cannot be said, at least as to the covenants of seizin and against incumbrance, which are broken, if at all, at the moment they are made, that the grantors did not thereby bind themselves, but only their heirs, etc.

*Deeds : Clerical errors.* The peculiar wording of the introduction to the covenants in this case is evidently the result of carelessness or awkwardness in filling up, in the printed form of the deed, the blank left for the word "themselves ;" and the blunder is held to be one so evident as to correct itself.

*Covenants against incumbrance : Diligence : Notice.* The purchaser under such a covenant is not called upon to exercise any diligence to ascertain the actual amount due at the time on the mortgage ; it is as usual and as competent to covenant against known, as against unknown incumbrances or defects of title.

*Heard April 29. Decided July 3.*

Error to Superior Court of Detroit.

*A. F. Wilcox,* for plaintiff in error.

*Ward & Palmer,* for defendant in error.

CHRISTIANCY, J.

This was an action of covenant brought by the plaintiff against the defendant in error upon the covenant against

incumbrances in a deed of conveyance of land executed by defendant to plaintiff September 10th, 1867.

The covenants in the deed (of defendant and wife), upon one of which the action is brought, are somewhat peculiar, and are in these words: "And the said parties of the first part, for their heirs, executors, administrators, do covenant, grant, bargain and agree, to and with the said party of the second part, his heirs and assigns, that at the time of the ensealing and delivery of these presents, they are well seized of the premises above conveyed, as of a good, sure, perfect, absolute and indefeasible estate of inheritance in the law, in fee simple; and that the said lands are free from all incumbrances whatever; and that the above bargained premises in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, against all and every person, or persons, lawfully claiming or to claim the whole or any part thereof, they will forever warrant and defend, except as to a certain mortgage of seven thousand three hundred dollars, made by the parties of the first part to Margaret Davidson *et al.;* this deed is given subject to said mortgage."

The mortgage alluded to had been executed some time previous to this deed, for the principal sum of seven thousand three hundred dollars, and at the time of the deed there was, besides the principal, two hundred and thirty-seven dollars of accrued interest unpaid; making the actual amount of the mortgage incumbrance, at the time the deed was executed, seven thousand five hundred and thirty-seven dollars.

A mortgage was introduced in evidence, given back to defendant by plaintiff upon the same land, at the date of the deed, for four thousand seven hundred dollars; and there was oral evidence tending to show that the whole purchase price of the land sold to the plaintiff was fourteen thousand dollars, and that plaintiff paid down in cash two thousand dollars, which, together with the mortgage of four thousand seven hundred dollars, given by defendant, made

six thousand seven hundred dollars, leaving just seven thousand three hundred dollars, the amount of the prior mortgage incumbrance stated in the covenants of the deed, and subject to which the deed was given.

As this evidence was in no way contradictory of the deed, or any of the mortgages, but went to show the circumstances with reference to which the covenant in question was made, and the whole transaction, of which the deed formed but a part, I think it was admissible. It tended clearly to show that the prior mortgage was assumed as part of the purchase money, and the amount at which it was so received.

It is therefore too clear to admit of any doubt, that the plaintiff, upon his own showing, could have no cause of action under his first count, which was for the whole amount of the incumbrance created by the mortgage; and the only question for consideration relates to his right to maintain the action under the second count for the accrued interest of two hundred and thirty-seven dollars in excess of the sum mentioned in the covenant.

The court charged, at the request of the defendant, that plaintiff had not proved the cause of action alleged in either count. He also further charged that the proper construction of the covenants in the deed was not that the amount of the mortgage incumbrance did not exceed seven thousand three hundred dollars at the time of the execution of the deed, but that the sum mentioned must be considered as matter of description only, inserted for the purpose of identifying the mortgage, and that the clause in question cannot be considered as a guaranty that the sum mentioned constituted the whole amount of the mortgage incumbrance.

This, so far as the charge of the court is concerned, presents the only question in the case.

But another, and (in logical order) a preliminary question is raised by the counsel for the defendant in error, that whether the court was correct or not as to the partic-

ular ground upon which he rested his charge; that the plaintiff cannot recover upon the covenant in question, because the defendant did not covenant for himself, but only for "his heirs, executors and administrators." The covenants are introduced by this language: "And the said parties of the first part, for their heirs, executors, administrators, do covenant, grant, bargain and agree to and with the said party of the second part, his heirs and assigns, that," etc., then follow the covenants, *first*, of seizin; *second*, against incumbrances; and *third*, of warranty. If no other covenant but that of warranty, which looks only to the future, and the breach of which could only occur in the future, had followed the introductory words, there might or might not (I express no opinion upon it) have been plausible reasons for saying the covenant was intended to bind the heirs, executors and administrators of the grantor, for such breaches, at least, as might occur after the grantor's death, and not the grantor himself; as in *Rufner v. McConnel, 14 Ill., 168* (and see *Hawks v. McCullough, 21 Ill., 220*), which may or may not have been correctly decided, if, from the whole instrument, it satisfactorily appeared that the covenant was intended to be thus limited. Such a limitation of the covenant of warranty, if clearly so intended, would not strike the mind as necessarily unreasonable or repugnant, as it would be in effect mainly, if not entirely, a covenant that his heirs, executors and administrators should defend against any lawful claims, etc.

But the covenant of seizin, and that against incumbrances, are broken, if ever broken at all, at the moment when made; and it certainly strikes my mind as very strange, and closely bordering upon the absurd, to say that the parties could have understood the intention of these covenants to have been that, for the grantor's own breach, committed in the very act of making the covenants, he was not to be held liable, but that he was binding his heirs, executors and administrators to sustain that liability. How he could thus bind them or either of them upon such cov-

enants, except as their liability should result from an obligation resting upon him, it is not very easy to discover, unless he can be held to be acting as their agent, and under their authority, which cannot be pretended. We must therefore, to sustain the theory of defendant, hold that these covenants were inserted for no purpose, and to have no effect, unless they were intended to bind the covenantor himself, and his heirs, executors and administrators, *as such,* and as a *result of the obligation thereby imposed upon himself.*

The first idea that strikes the mind in reading these covenants in connection with the whole instrument, is, that the peculiar form of language used in introducing this covenant, was the result of carelessness or awkwardness, in omitting to fill up, in the printed form of a deed, the blank usually left for the personal pronoun "himself" or "themselves," representing the grantor or grantors, either in the singular or plural as the case might require; and that the blunder is one so evident as to correct itself when the whole instrument is read together; unless we are to disregard what satisfactorily appears to have been the intention and understanding of the parties, for a dry technicality, which would defeat that intent, render the covenants nonsensical, and make utterly valueless the covenants in a large share of the conveyances in this state, upon which the purchasers have in perfect good faith relied.

I venture to say that no man of ordinary intelligence can read this deed without coming to the conclusion that it was the understanding of the parties, that the grantor was binding himself personally by these covenants; and this is equivalent to saying that, in the opinion of all men of ordinary intelligence, a contrary construction would be wrong.

This brings us to the main point in the case, upon which the decision of the judge was based, viz.: whether the amount of the sum of seven thousand three hundred dollars, mentioned in reference to the mortgage, should be

construed as intended to state the full amount of the mort-
gage incumbrance at the time of executing the deed, or as
mere reference to, or description of, the mortgage as orig-
inally executed.

It is manifest, on looking at these covenants in connec-
tion with the clause in which the mortgage of seven thou-
sand three hundred dollars is mentioned, that the purpose
of this clause was primarily and directly to limit or modify
the prior unlimited covenant against incumbrances, upon
which the grantor would otherwise have been liable for all
incumbrances, whatever their amounts; and, secondly, and
less directly, so far to modify the covenant of warranty that
the grantor should not warrant against the incumbrance
mentioned as existing; the intention being, as expressed in
the clause in question, that the conveyance made should be
subject to the mortgage.

Now, construing this qualifying clause of the covenants,
*first,* without reference to any extrinsic facts, except what
appear in the instrument itself; as the grantor, under his
previous and otherwise unlimited covenant against incum-
brances, would have been liable for all incumbrances of any
amount, the primary object of the qualifying clause must
have been to show for what amount of existing incumbrance
he was not, according to the understanding of both parties,
to be held liable.    This was the fact which was essential
to both parties,—to the purchaser who was taking the land
subject to it, and to the grantor, in limiting his covenant.

There were two ways of accomplishing this object, the
first and most direct and natural would be to state directly
and expressly the exact amount of the incumbrance exist-
ing at that particular time, as well as the nature of that
incumbrance, and in whose favor, etc.    But upon the
principle that that is certain which can be rendered certain
by mere reference to what is certainly fixed, the existing
amount might be shown by reference to the instrument
creating the incumbrance, if it were clear that nothing
had ever been paid upon it, and if this was expressly

stated in the covenant (or this qualifying clause), or enough appeared upon it to show that such was the clear understanding and agreement of the parties. But the whole object of this reference, after all, would not be to identify a particular mortgage, but for the purpose, through or by means of that reference, to ascertain and define the existing amount of the incumbrance thereby resting upon the land. Keeping these considerations in view, when the grantor covenants against all incumbrances, and to warrant and defend, "except as to a certain mortgage of seven thousand three hundred dollars, made by the parties of the first part to Margaret Davidson *et al.*," it is certainly, to my mind, a much more natural inference that the sum was intended to be mentioned as the then existing amount of the incumbrance, and so understood by the parties (certainly by the purchaser), than that the entire clause in which the mortgage is mentioned was intended merely as matter of reference or a description of the mortgage by the statement of the sum for which it was originally given, which would leave the purchaser to find out at his own risk what the amount was. It seems to me that, upon the defendant's theory, the clause would naturally have stated the date of the mortgage, and whether upon interest, so that the amount could be readily ascertained, if not also the place of the record. The original amount of the mortgage was wholly immaterial to the vendor as well as the purchaser.

The purchaser was taking the property subject *to* the incumbrance, as then existing, and accordingly this sum is not mentioned as the original amount, which if intended would have been in some way indicated as such, by saying "given for seven thousand three hundred dollars," or in some other way giving the idea that the original amount was intended.

In an action of covenant like this, I see nothing in the suggestion that this clause was sufficient notice to the purchaser, so that he might have ascertained the existing

amount by due diligence. It is as usual, and certainly as competent, to covenant against *known* as unknown incumbrances or defects of title; and, with this covenant, the purchaser was not called upon for the exercise of any diligence.

Without any reference to extrinsic facts, it seems to me sufficiently clear that the clause in question should be understood as intended to state the amount of the incumbrance existing by virtue of the mortgage at the time of the conveyance. I should so have understood it had I been the covenantor under the circumstances disclosed by the deed alone, and so, I feel confident, it must have been understood by the purchaser. If, however, this is not clearly so, then it is at least doubtful which is the true interpretation; and the contract should be read, as all contracts which admit of any doubt should be read, in the light of all the circumstances under and with reference to which it was made; and such extrinsic facts and circumstances are, I think, clearly admissible for this purpose. And, reading the clause in question in the light of such extrinsic facts and circumstances as the evidence tended to show, it is impossible to doubt that the meaning I have attributed to it is the correct one; and that this seven thousand three hundred dollars, being assumed by the plaintiff as part of the purchase price, was by the parties treated as the true amount of the incumbrance at that time.

I think the judgment should be reversed, with costs, and a new trial granted.

COOLEY and CAMPBELL, JJ., concurred.

GRAVES, CH. J., did not sit in this case.