PEASE *v.* WARNER.

1. MORTGAGES — CONVEYANCE BY MORTGAGOR — ASSUMPTION OF DEBT BY GRANTEE—EFFECT—PRINCIPAL AND SURETY.

   Where a mortgagor conveys the mortgaged premises to a grantee who assumes the mortgage debt, the grantee becomes, as to the grantor, the principal debtor, and the grantor is his surety.

2. COVENANTS — OPERATION — RUNNING WITH LAND — COVENANT AGAINST INCUMBRANCES.

   In this State a covenant against incumbrances is personal and does not run with the land.

3. SAME—ACTION FOR BREACH—CONVEYANCE—EFFECT.

   A right of action for breach of the covenant against incumbrances does not pass by deed of the land.

4. SAME — MORTGAGES — FORECLOSURE — RIGHTS OF SUBSEQUENT GRANTEE.

   If a covenant against incumbrances in a deed which excepts a certain mortgage, "to be paid on or before five years from" the date thereof, can be construed as a covenant that the mortgage cannot be foreclosed before that time, such covenant will not run with the land, and a subsequent grantee, taking from one who assumed the mortgage debt, cannot, on a bill by the mortgagee to foreclose for a default in the payment of interest agreed to be paid by the mortgagor, have specific performance of the covenant in the mortgagor's deed, by compelling him to satisfy the mortgagee's claim, and await the expiration of the five years before foreclosing. GRANT, C. J., and MONTGOMERY, J., dissenting.

Appeal from Calhoun; North, J. Submitted October 25, 1907. (Docket No. 144.) Decided June 27, 1908.

Bill by George H. Pease against Ben F. Warner, Charles W. Jewett, Anna M. Jewett, and Amariah F. Freeman to foreclose a mortgage. From a decree for complainant, defendant Freeman appeals. Affirmed.

*John C. Patterson*, for complainant.

*F. M. Freeman* (*Robert E. Bunker*, of counsel), for defendant Freeman.

*H. W. Cavanagh*, for defendant Warner.

On March 2, 1905, defendant Warner executed a mortgage to complainant upon four pieces of real estate owned by him. One was a part of a lot in the village of Homer, with a building thereon, the other three pieces were farm property consisting in all of 110 acres, one of which is Mr. Warner's homestead. The mortgage was for $6,000, payable in installments, running from one to eight years from date.

On January 25, 1906, Warner sold and conveyed the village property to defendants Jewett. That deed contained the following:

"This deed is given subject to one mortgage of six thousand dollars, which second party agrees to assume as part of the above considerations to be paid on or before five years from date March 2, 1905. First party retains the use of said described property until March 2, 1906.

" All interest and taxes to be paid to March 2, 1906.

"Together with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining; to have and to hold the said premises as herein described with the appurtenances unto the said parties of the second, and to their heirs and assigns forever: And the said party of the first part for himself, his heirs, executors and administrators, does covenant, grant, bargain, and agree, to and with the said parties of the second part, their heirs and assigns, that at the time of the ensealing and delivery of these presents he is well seised of the above granted premises in fee simple; that they are free from all incumbrance whatever and that he will, and his heirs, executors and administrators shall warrant and defend the same against all lawful claims whatsoever, excepting the six thousand dollar mortgage heretofore stated."

On May 17, 1906, defendants Jewett conveyed said village property to defendant Freeman. The Jewetts covenanted in that deed that the lands are free from all incumbrance whatever except a mortgage thereon for $6,000,

given by one Ben F. Warner, former owner of said premises, to one George H. Pease, interest being paid thereon to March 2, 1906. The land was subject to the mortgage. This village property was exchanged for some property in the village of Manchester, Washtenaw county, owned by Freeman. Jewett represented to Freeman that the interest was paid to March 2, 1906, that it would run five years before it would mature, and that all that Freeman would be required to do during that time would be to keep up the interest on the mortgage. The amount of the mortgage was deducted from the purchase price. The Jewetts produced a certified copy of the deed from Warner to them and exhibited it to Freeman in corroboration of their statement. Neither the mortgage nor a certified copy was produced to Freeman. He purchased in reliance upon the representations made in the deed as to the terms of the mortgage. The statements were untrue in three particulars: (1) It was payable in yearly installments. (2) It was to run eight years instead of five. (3) The whole became due upon the failure to pay the interest, etc.

Complainant filed the bill to foreclose the mortgage, alleging a default in payment of the first installment of principal and interest, due March 2, 1906, his election to declare the entire amount due, and setting forth the above conveyance, and making the parties thereto defendants. Defendant Warner answered and filed a cross-bill, claiming that the village property sold to and now owned by defendant Freeman should first be sold in payment of the mortgage debt.

The court entered a decree of foreclosure, decreeing that defendant Freeman's land should be sold first to satisfy the sum of $6,367.21, the amount due on said mortgage debt, less $316.29, which was interest due March 2, 1906, and was unpaid at the time of the deed from Jewetts to defendant, and that Warner's lands be sold to satisfy the sum of $316.29, which was due March 2, 1906, and unpaid.

GRANT, C. J. (*after stating the facts*). It is conceded that complainant is entitled to a decree of foreclosure. The sole controversy arises between Freeman and Warner. The representations made by Warner in his deed to the Jewetts were untrue. It is immaterial whether they were intentionally or thoughtlessly made. Did defendant Freeman have a right to rely upon them? He had a right to rely upon these deliberate and written representations. The law does not permit one to escape the consequences of his untruthful statements by saying to him who has relied upon them: "You might have made further inquiry and ascertained that my statement was untrue." *Holcomb* v. *Noble*, 69 Mich. 399; *Krause* v. *Cook*, 144 Mich. 365.

The court below held that he did have such right so far as the representation of the amount due thereon was concerned, but not as to the date when the mortgage would fall due. If Freeman had a right to rely upon one representation he had a right to rely upon all. He was under no more obligation to make further investigation upon one point than upon the other. If the representation in the deed had been truthfully made, undoubtedly, under the authorities, as well as in reason, the village property, owned by Freeman, should first be sold, because he purchased the property subject to the mortgage, and the amount was deducted from the purchase price.

Time appears to have been valuable to defendant Freeman. The testimony is clear that he would never have made the purchase had he known that the entire mortgage was then due at the option of the mortgagee. He desired time to dispose of the property, and, under the solemn representation of Warner in his deed, there were five years in which he was only required to pay interest annually at five per cent. Warner's contract with the Jewetts, his grantees, was that the mortgage had five years to run from March 2, 1905. This contract was a covenant. Was it personal, or does it run with the land? If the complainant, as he might have done, had collected

the note from Warner, Warner would have been subrogated to all the rights of complainant. Could he have foreclosed the mortgage against the Jewetts in violation of his contract and covenant with them that the principal of the mortgage had five years to run? Could he have compelled payment by the Jewetts before March 2, 1905? It appears to me that these questions must be answered in the negative.

Are Jewett's rights under his contract with Warner assignable? Where a grantor covenanted to warrant and defend the land against all claims except an incumbrance of $1,600, and the incumbrance was in fact $1,900, it was held that it was a covenant running with the land. *Johnson* v. *Hollensworth*, 48 Mich. 140. The court, speaking through Justice COOLEY, said:

"There is no fixed or essential form for any covenant. A covenant is merely a promise under seal, and to ascertain what it is in legal import we have only to see what the promissor has undertaken for; in other words, what is the legal interpretation of the language in which the promise is expressed."

What difference in principle is there in covenanting that the incumbrance is a certain amount, and covenanting that the certain amount is all due at a certain time? Under defendant Warner's theory, if the mortgage had been $10,000 instead of $6,000 as covenanted, his grantee would have been relieved of the payment to him of the excess, though compelled to pay the full amount to the mortgagee; but if he had covenanted that the mortgage was due in ten years, when in fact it was due in one, that would have been a personal covenant and would not have run with the land. Under this contention, Warner, having paid the mortgage, could not bring suit against his grantees, the Jewetts, but could bring suit for foreclosure against Jewetts' grantee or any subsequent grantee. I see no logic in such a distinction. The Jewetts are not damaged. The subsequent grantee is. It is said by Chancellor Kent (4 Kent's Commentaries, p. 472):

"He [the subsequent grantee] is the most interested and the most fit person to claim the indemnity secured by them [the covenants], for the compensation belongs to him as the last purchaser and the first sufferer."

In *Smith* v. *Lloyd*, 29 Mich. 382, the mortgage covenanted against was one for $7,300, which was the amount of the principal. There was accrued interest, but the court held that it was a covenant not descriptive of the mortgage but of the amount of the existing incumbrance. Justice CHRISTIANCY in that case said:

"When the grantor covenants against all incumbrances, and to warrant and defend, 'except as to a certain mortgage of seven thousand three hundred dollars, made by the parties of the first part to Margaret Davidson, et al.,' it is certainly, to my mind, a much more natural inference that the sum was intended to be mentioned as the then existing amount of the incumbrance, and so understood by the parties (certainly by the purchaser), than that the entire clause in which the mortgage is mentioned was intended merely as matter of reference or a description of the mortgage by the statement of the sum for which it was originally given, which would leave the purchaser to find out at his own risk what the amount was."

In *Security Bank* v. *Holmes*, 65 Minn. 531, it is said:

"It is immaterial whether we say that a covenant against an incumbrance which is a money charge on the land runs with the land, or that the cause of action for a breach of the covenant is assignable, and passes by deed to the grantee of the covenantee, immediate or remote, who sustains injury by reason of the incumbrance; for in either case we reach the same result. The covenant, which is one of indemnity, in effect attaches itself to the title assumed to be conveyed by the deed, and accompanies it for the protection of the covenantee or any of his assigns who may finally be injured by the incumbrance. In short, for all practical purposes, a covenant against incumbrances which are a money charge on the land runs with the land until they are discharged."

A covenant as to the time when an incumbrance becomes due may be more disastrous to a purchaser than a

covenant falsely representing the amount. One may be willing and able to purchase and pay for land where he has five years in which to pay an incumbrance, but would not purchase if he must pay in one year. I can see no difference in principle between a covenant as to amount and a covenant as to time.

It is equitable and just that Warner should, if he can, make these representations good. Freeman is not seeking to avoid the ultimate liability of his land for the debt. The purchase price was $9,500. Under the decree the defendant is required to pay $6,000 five years before, under Warner's representations, he would be required to. Warner should make good his deliberate representations if it is in the power of a court of equity to compel him to do so. We think it is. If he pays the mortgage debt he is subrogated to the lien upon the defendant's land, and at the end of five years can foreclose, and before, should Freeman fail to pay the annual interest. Warner, and not Freeman, is responsible for this unfortunate state of affairs. The party responsible should suffer the inconvenience, and, if necessary, ultimate loss. Warner should be allowed the privilege of paying the mortgage, which he can do at any time, and take an assignment thereof to himself. In this way he will suffer no loss. If he cannot procure the money, then his own lands must be sold first, and in that event he will be subrogated to the mortgage lien upon the property. Such a decree does exact justice, compels Freeman to pay according to his agreement, and secures Warner from loss.

The decree should be reversed, and decree entered in this court in accordance with this opinion, with the costs of both courts.

MONTGOMERY, J., concurred with GRANT, C. J.

OSTRANDER, J. I am not able to agree with the conclusions stated in the opinion of the Chief Justice. The mortgage in question was made payable according to a certain note. The terms of the note were that $300 of

principal should be due each year for three years, $500 the fourth year, $500 the fifth year, with the privilege of then paying in full. If there was any unpaid principal after the fifth year, it became due eight years after the date of the mortgage, which was March 2, 1905. Only $1,900, it is seen, fell due during the first five years. If no more was paid, the remaining $4,100 fell due at the end of eight years. The alleged misrecital or misleading description of this mortgage contained in the deed made by the mortgagor to Jewett consists of the words "to be paid on or before five years from date March 2, 1905," found in the sentence:

"This deed is given subject to one mortgage of six thousand dollars, which second party agrees to assume as part of the above consideration to be paid on or before five years from date March 2, 1905."

Succeeding this sentence are the following:

"First party retains the use of said described property until March 2, 1906. All interest and taxes to be paid to March 2, 1906."

The deed does not otherwise contain any description of the mortgage. It is silent as to rate of interest, time of interest payments, requirements that the taxes and the insurance premiums shall be paid, the conditions precedent to foreclosure. Reference to the instrument, or to the record thereof, and to the note or the acceptance of a parol statement of its terms was necessary if a purchaser desired information. It is a condition of the mortgage that interest shall be paid annually at the rate of five per cent., and that if any default is made in the payment of the interest and it remains unpaid for 60 days, the mortgagee, at his option, may declare and treat the whole indebtedness as due and payable and may foreclose the mortgage. There are like conditions with respect to taxes and insurance premiums. If an installment of principal becomes due and is not paid, foreclosure of the mortgage for such past due installment may be begun. What actually occurred

was that neither the interest falling due March 2, 1906, nor the first installment of principal, was paid. It was more than 60 days overdue when defendant Freeman accepted his deed. The mortgagee declared the whole amount of the mortgage to be due and instituted this suit. Defendant Warner, in his deed to Jewett, promised to pay this installment of interest. Jewett, in his deed to Freeman, represented that it had been paid. Freeman accepted these assurances and without further inquiry purchased the property. He accepted from his grantor a covenant to warrant and defend against all lawful claims except a mortgage—

"For six thousand dollars given by one Ben F. Warner, former owner of said premises, to one George H. Pease, interest being paid thereon to March 2, 1906,   *   *   * second party taking said premises by this deed subject thereto."

By his transfer of a portion of the mortgaged property to Jewett, subject to the entire mortgage debt, Jewett assuming the mortgage as a part of the consideration, Warner, as between himself and Jewett, paid the mortgage. Jewett became, as to Warner, the principal debtor, and Warner his surety. *Crawford* v. *Edwards*, 33 Mich. 354; *Miller* v. *Thompson*, 34 Mich. 10; *Higman* v. *Stewart*, 38 Mich. 513, 523; *Corning* v. *Burton*, 102 Mich. 86. And see *Hicks* v. *McGarry*, 38 Mich. 667. The mortgagee asks for, and may insist upon, a decree for deficiency against Jewett, who is not contesting. It is defendant Freeman who is insisting that the property shall not be immediately devoted to the payment of the mortgage. It is his theory that he is entitled to have a sale of the premises deferred, upon payment of the interest, until five years after March 2, 1905, because in the deed from Warner to Jewett the property was not sold subject to a mortgage due, or to become due presently, but subject to one falling due on or before five years from March 2, 1905.

It is to be noticed that no fraud on the part of Warner

is charged or attempted to be proved, and, further, that the Chief Justice, in his statement of the case and in the reasoning employed, does not rely alone upon the alleged misdescription of the mortgage in the Jewett deed, but upon that and an omission to state in the deed that the mortgage contained what is known as an interest clause. The conclusion, therefore, involves the proposition that if one deeding land incumbered by a mortgage against which he refuses to covenant, and which the grantee assumes, sets out in his deed any of the terms of the mortgage, he must also set out any qualifying terms of those terms or be responsible as for a misrepresentation by concealment; and the further proposition that a subsequent grantee of the equity of redemption, who does not assume the debt, who has accepted a different contract and covenant concerning the same subject-matter, and who buys expressly subject to the mortgage, may have, in effect, specific performance of the representation, or the covenant, of his remote grantor. Conceding, for the purposes of argument, that courts of equity have jurisdiction to compel specific performance of such a covenant (see, generally, Rawle on Covenants for Title [5th Ed.], §§ 358-369), the opinion is consistent only if reliance is placed upon the fact that the deed did not state that if the interest on the mortgage was not paid, the whole sum secured might be declared to be due and immediately payable, because the trouble arises, not on account of the alleged misrecital in the deed, but because the interest was not paid. So far as any actual default on the part of Warner is concerned, the same situation would exist if the description given corresponded with the terms of the mortgage. The mortgagee might or might not have foreclosed his mortgage for the installment of principal falling due. Freeman might have been willing to pay the annual installments of principal, even though he did not suppose that any of the principal fell due until 1910. In any event, there could be no present demand for the whole debt if the interest had been paid.

By the terms of the mortgage, some of the principal was to be paid before, and all of it could be paid at the end of, five years. It is said the language employed in the deed was a representation, or a covenant, or both, that it was due on or before five years from its date and that the expression "to be paid" on or before a certain date means, in common usage, that it fell due on the date named and was payable earlier at the option of the payee. It is not claimed that the expression was not understood by Jewett, the grantee, or that he did not know all of the terms of the mortgage. When we consider that deeds of conveyance are prepared after the bargain has been made, and that all scriveners do not, with nicety, express the contract, I think it should not be said that the particular expression so plainly means, what it is now contended that it means, that Mr. Freeman was entitled to rely upon his interpretation of it and to bind Mr. Warner thereby.

If the interpretation of the language contended for by appellant is admitted, there was no representation that the mortgage did not have an interest clause, or a tax or insurance clause, unless by construction it is held that the ambiguous words of description referred to have a meaning which excludes the idea that there could be a foreclosure for a greater sum than the unpaid installments of interest. Such a construction, in a court of equity, for the alleged purpose of doing equity, would be a refinement in itself inequitable.

In dealing with this case, it is a mistake to proceed as if Freeman occupied, in fact or in law, the position of Jewett. He does not. Jewett, in fact, promised to pay the incumbrance. Freeman is under no obligation to do so. If it were a question of mere equities, application of the fund should in no case be postponed except upon condition that Freeman become responsible for the payment of the mortgage. As matter of law, so far as defendant Freeman is concerned, there is no property subject to the mortgage except the property in which he purchased the

equity of redemption. The argument made for him in this case would as well secure him the right to a specific performance of the covenant if the mortgage conveyed no other property. The method of relief proposed may be convenient, if relief is to be given, but it is not a case for contrasting mere equities. The question which precedes all others is whether defendant Freeman is entitled to any relief. A court of equity will not enlarge his rights. The conveyance of land by virtue of which he is here at all is expressly qualified. The qualification has been recited. He knew that Jewett, his grantor, had assumed the mortgage. His deed contains no reference to any right of action which Jewett had against Warner for the breach of the covenant against incumbrances; a right which, if ever, accrued before Freeman purchased. In this State, a covenant against incumbrances is personal and does not run with the land. *Davenport* v. *Davenport's Estate,* 52 Mich. 587; *Lovejoy* v. *Potter,* 60 Mich. 95, 101; *Matteson* v. *Vaughn,* 38 Mich. 373; *Guerin* v. *Smith,* 62 Mich. 369. This is the rule in most jurisdictions. 11 Cyc. p. 1087. The grantee in a deed must make his own contract against incumbrances with his grantor and look to him for indemnity if he is obliged to pay money or otherwise relieve from an incumbrance not excepted in his deed. This court has never made a contrary ruling. The case of *Post* v. *Campau,* 42 Mich. 90 (see *Davenport* v. *Davenport's Estate,* supra, for comment), and the case of *Johnson* v. *Hollensworth,* 48 Mich. 140, are neither of them authority for an opposed doctrine. *Smith* v. *Lloyd,* 29 Mich. 382, was an action for breach of the covenant against incumbrances and is authority (p. 385) for the proposition that the covenant is broken, if ever, when made. Nor is this latter case opposed in principle to *Shanahan* v. *Perry,* 130 Mass. 460.

A right of action for breach of the covenant does not pass by deed of the land. *Guerin* v. *Smith, Davenport* v. *Davenport's Estate,* supra; *Norton* v. *Colgrove,* 41 Mich. 544. Defendant Freeman, therefore, has not suc-

ceeded to any of the rights (assuming the contract against incumbrances in the deed from Warner to Jewett to be breached) which defendant Jewett possessed.    The court below required Warner to pay the interest upon the mortgage for the first year, not upon the ground that Freeman had the right to rely upon any representation in the deed from Warner to Jewett, but because upon the face of the contract Warner agreed to pay it and in terms made the property the primary fund to pay only the mortgage and the interest, etc., accruing after the first year.    Whatever the injustice to Mr. Freeman may seem to be, I conclude that upon the authority of our own decisions we are required to say that a covenant against existing incumbrances does not run with the land, that no right accruing to his grantor passed to Mr. Freeman, and upon reason that he had no right, legal or equitable, to rely upon the description of the mortgage or upon the representations or the covenant made by Warner.    The decree should be affirmed, with costs to defendant Warner.

BLAIR, HOOKER, MOORE, CARPENTER, and McALVAY, JJ., concurred with OSTRANDER, J.