CHARLES E. COTTING & others, trustees, *vs.* COMMONWEALTH.

SAME *vs.* SAME.

Suffolk.   March 8, 1910. — May 17, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Harbor and Land Commissioners.  Commonwealth Flats.  Commonwealth.  Deed,*
Covenant of warranty.  *Sewer.*   *Tax,* Sewer assessment.  *Constitutional Law.*
*Statute,* Unconstitutionality of part of statute.   *Contract,* Construction, Perform-
ance and breach.  *Equity Jurisdiction,* Of suits against Commonwealth.

Under R. L. c. 96, § 3, formerly Pub. Sts. c. 19, § 3, which provides that the board
of harbor and land commissioners "may make contracts for the improvement,
filling, sale, use or other disposition of the lands at and near South Boston known
as the Commonwealth Flats," and that "all conveyances, contracts and leases
made under the provisions of this section shall be subject to the approval of the
Governor and Council," such board has the power to make in a deed of a parcel
of land included in the Commonwealth Flats covenants of seisin, that the land is
free from incumbrances, of right to convey and of warranty.

In January, 1899, the board of harbor and land commissioners, acting under the
authority conferred upon them by Pub. Sts. c. 19, § 3, made a contract in writ-
ing to sell and convey to a certain person a parcel of land included within the
Commonwealth Flats.  In November, 1899, the city of Boston ordered the con-
struction of a main sewer in a street abutting on the premises agreed to be con-
veyed.  In November, 1901, the land was conveyed pursuant to the agreement
by the board of harbor and land commissioners acting on behalf of the Common-
wealth, the deed containing covenants of warranty and that the land was free

from incumbrances. On December 1, 1902, the city of Boston levied an assessment for the construction of the sewer, which the grantee in the deed was obliged to pay. *Held*, that, although the construction of the sewer and the assessment therefor were not made until after the deed was executed and delivered, the fact, that the order for the construction was made before the deed, created a liability which was sure to become absolute and enforceable against the land as soon as the work was completed and the expense ascertained and the Commonwealth had parted with its title, which liability constituted a breach of the covenant of freedom from incumbrances ; *and also*, that under the covenant of warranty the Commonwealth was bound to relieve the grantee from the charge upon the land, and that its failure to do so was a breach of that covenant.

Section 4 of St. 1892, c. 402, which provides that when an assessment for the cost of a sewer in the city of Boston "is made for a parcel of land for which the owner is by law exempt from being taxed," the collection of the assessment shall be suspended, but "after the day on which the parcel ceases to be owned by a person or corporation so exempt" the assessment "shall be collected as if that day were the date of the passage of the . . . order for making the sewer," does not apply until an assessment has been made; and therefore did not suspend the creation of an incumbrance created by an order of the city of Boston for the construction of a sewer on a portion of the Commonwealth Flats, which order was made while the portion of the flats in question was owned by the Commonwealth, nor cause the effect of the order not to be an incumbrance at the time of a conveyance made by the Commonwealth after the order for construction but before an assessment for the cost of the sewer was laid.

There may be a question whether St. 1892, c. 402, § 4, which provides that when an assessment for the construction of a sewer in the city of Boston "is made for a parcel of land for which the owner is by law exempt from being taxed," the collection of the assessment shall be suspended, but, "after the day on which the parcel ceases to be owned by a person or corporation so exempt," the assessment "shall be collected as if that day were the date of the passage of the . . . order for making the sewer," should be treated as separable from other sections of the same statute which have been declared unconstitutional, per KNOWLTON, C. J.

The board of harbor and land commissioners in a bond for a deed agreed on January 10, 1899, to execute and deliver to a certain person a "warranty deed or deeds" of a part of the Commonwealth Flats in South Boston bounded by Summer Street extension, E Street, Fargo Street and D Street. On January 17, 1899, with the approval of the Governor and Council, the board made with the prospective purchaser a supplemental agreement in which it was recited that the contract for the sale of the premises was "made with the expectation on their part that Fargo and E Streets will be forthwith constructed, paved, sewered and sidewalks laid without expense to the purchasers," and in which was the following language: "We agree to use our best efforts during our continuance as members of the board of harbor and land commissioners to have such work done at an early date, either by the city of Boston, by the Commonwealth, or otherwise, without expense to the purchasers." On November 26, 1901, the land was conveyed by the board on behalf of the Commonwealth to the purchaser by a deed containing covenants that the land was free from incumbrances, and of warranty. On December 16, 1901, the city of Boston ordered the construction of certain inlet and connecting sewers joining to a sewer previously constructed in E Street. On October 7, 1904, an assessment was made therefor to be paid in ten yearly payments. Upon the first assessment becoming due and the Common-

wealth refusing to pay it, the purchaser by a bill in equity in the Superior Court sought to have it adjudged that the Commonwealth should pay the assessment, and to have the Commonwealth ordered to do so and also to pay all payments to become due in the future. *Held*, that, the order for the inlet and connecting sewers not having been made until after the delivery of the deed, the Commonwealth was under no obligation to pay the assessment by reason of the covenants therein; and that neither in the bond for the deed nor in the agreement supplemental thereto was there any express agreement to pay the tax; and therefore that the suit could not be maintained, even if, under the provisions of R. L. c. 201, relating to suits against the Commonwealth, the court had jurisdiction to entertain it, which was not decided.

KNOWLTON, C. J.  These two cases, one at law and the other in equity, brought under the R. L. c. 201 and the acts in amendment thereof, were heard together to determine, as the principal question, whether the Commonwealth, either upon its preliminary contracts or upon covenants in its deeds, was bound to protect the plaintiffs from a liability for an assessment for a part of the cost of certain sewers on lands conveyed to them by the Commonwealth.*  The action at law is to recover the amount paid by the plaintiffs in discharge of an assessment upon land conveyed to them by a deed of the board of harbor and land commissioners, bearing date November 26, 1901.  The deed was made in pursuance of a previous contract contained in a bond signed by the members of the board, dated January 10, 1899, to execute and deliver to the plaintiffs a "warranty deed or deeds" of a part of the Commonwealth Flats in South Boston. On January 17, 1899, a supplemental agreement was executed by the members of the board, with the approval of the Governor and Council, in which it was recited that the contract for the sale of the premises was "made with the expectation on their part that Fargo and E Streets will be forthwith constructed, paved, sewered and sidewalks laid without expense to the purchasers."  It also contained the following language: " We agree

---

\* The land was described in the deed as "a parcel of land in Boston in the County of Suffolk in said Commonwealth, being a part of the land known as the Commonwealth Flats at South Boston and bounded and described as follows: northeasterly by the side line of Summer Street extension, so called, 838.98 feet; southerly by the side line of E Street 405.92 feet; southwesterly by the side line of Fargo Street 538.66 feet; northwesterly by the side line of D Street 272.67 feet, as shown in a plan thereof annexed hereto, containing 188.126 square feet of land."

to use our best efforts during our continuance as members of the board of harbor and land commissioners to have such work done at an early date, either by the city of Boston, by the Commonwealth, or otherwise, without expense to the purchasers." The deed above referred to contained general covenants " of seisin, against incumbrances, of right to convey and of warranty." It in terms granted " the right, as appurtenant to said premises and each and every part thereof, to use said streets and the sewers therein for all purposes for which public highways and sewers may be lawfully used." One of the streets referred to was E Street.

On November 29, 1899, the city of Boston ordered the construction of a main sewer in E Street, abutting on said premises, and on December 1, 1902, levied an assessment therefor, which the plaintiffs have been obliged to pay. The first question raised by the defendant is whether the Commonwealth was bound by the covenants in the deed.

The authority of the board of harbor and land commissioners relative to this subject was very broad. It is found in Pub. Sts. c. 19, § 3, in part in these words: " Said board may make contracts for the improvement, filling, sale, use, or other disposition of the lands at and near South Boston known as the Commonwealth Flats at South Boston. . . . All conveyances and contracts made under authority of this section shall be subject to the approval of the Governor and Council." This clearly includes a right to make conveyances. In making contracts for sale, the board plainly would have a right to make reasonable stipulations in regard to the cost of contemplated sewers assessable on the land, and, in a deed of conveyance, to insert reasonable covenants touching this subject. Similar contracts or covenants in similar cases have been approved by this court. *Bronson* v. *Coffin*, 118 Mass. 156. *Boston Molasses Co.* v. *Commonwealth*, 193 Mass. 387. *Corcoran* v. *Boston*, 185 Mass. 325. See also as to the general principle, *Peters* v. *Farnsworth*, 15 Vt. 155; *Schultz* v. *Griffin*, 121 N. Y. 294; *Vanada* v. *Hopkins*, 1 J. J. Marsh. 285, 293. We are of opinion that the covenants in the deed were authorized by the statute.

The next questions are whether the liability to assessment for a sewer, the construction of which had been ordered previously,

is a breach of the covenant of freedom from incumbrances in a deed, and whether the failure to protect the grantee from an assessment afterwards made upon the land, to pay the cost of construction of such a sewer, is a breach of the covenant of warranty. It is plain under our decisions that, if the grantor had been an individual owner whose land was liable to assessment, such an assessment would be an incumbrance, even though the construction of the sewer and the assessment for it were not until afterward. *Carr* v. *Dooley*, 119 Mass. 294. See also *Hutchins* v. *Moody*, 30 Vt. 655 ; 34 Vt. 433; *Peters* v. *Myers*, 22 Wis. 602. We may assume that, under our decisions, no assessment could be enforced against the Commonwealth so long as it held the title. *Corcoran* v. *Boston*, 185 Mass. 325 ; 193 Mass. 586. *Worcester County* v. *Worcester*, 116 Mass. 193, 194. *Boston* v. *Boston & Albany Railroad*, 170 Mass. 95. But this would not invalidate an assessment made for construction completed after the title had passed to a private person. The condition when the plaintiffs took their deeds was that this land was subject to an assessment as soon as it came into the plaintiffs' hands, under an order for a sewer which had been passed previously. There was a liability which was sure to become absolute and enforceable against the land as soon as the work was completed and the expense ascertained. This was an incumbrance from which the plaintiffs were entitled to be protected under the covenant.

It is even more plain that, under the covenant of warranty, the Commonwealth is bound to relieve the plaintiffs from this charge upon their land. *Hill* v. *Bacon*, 110 Mass. 387.

We do not find it necessary to determine whether, under the St. 1892, c. 402, § 4, the same result would be reached in reference to the covenants against incumbrances.* See *Boston* v. *Boston & Albany Railroad*, 170 Mass. 95, 102. This statute has been held unconstitutional in some of its provisions (see

---

* The Commonwealth had argued that " if the order for the construction of the sewer became an incumbrance by virtue of St. 1892, c. 402, § 4, it did not become an incumbrance until the deed from the Commonwealth to the plaintiffs took effect, and therefore was not a breach of the covenants in such deed."

*Weed* v. *Mayor & Aldermen of Boston*, 172 Mass. 28), and there may be a question whether this section should be treated as separable from the others, and valid.

For the reasons above stated, the plaintiffs are entitled to an adjudication against the Commonwealth for the amount agreed upon in the statement of facts on file.

The suit in equity relates to an assessment under an order, made on December 16, 1901, for the construction of certain inlet or connecting sewers, which assessment was made on October 7, 1904. The plaintiffs rely upon the same deed and contracts as in the other case. This assessment is not within the covenants contained in the deed, because it is founded on an order for the construction of sewers, not made until after the deed was given. When the deed was delivered there was no order or proceeding that created a liability to an assessment for these inlet or connecting sewers, and there was therefore no incumbrance, and no lawful claim or demand on this account to which the covenant of warranty could apply.

The plaintiffs seek to support their claim under the bond for a deed and the supplemental writing. In the bond there is no express agreement covering an assessment for the construction of sewers. There is a recital that the obligees have " agreed to pay all lawful taxes and assessments, if any, levied on the premises, except those for laying out and paving streets and sidewalks and building sewers," etc. These, being left without any agreement, rest where the law puts them. The obligees cannot found a liability upon this absence of a stipulation.

The supplemental agreement does not go far enough to create an obligation. As to Fargo and E Streets, there was a statement of an expectation that they would be forthwith provided with sewers without expense to the purchasers. There was no undertaking in regard to it. There was also an agreement of the members of the board to use their best efforts to have the work done at an early day without expense to the purchasers. There was no contract to save the purchasers from this expense, and there is nothing to show that their agreement was not performed. Moreover, these provisions relate only to Fargo and E Streets, and not to the inlet and connecting sewers.

There is nothing in any of the papers that creates a liability

on the part of the Commonwealth to pay the assessments referred to in the bill in equity.

Although no question of jurisdiction was raised by the pleadings, the Commonwealth, in its brief, contends that the R. L. c. 201, under which this bill is brought, is not broad enough to confer jurisdiction in equity to grant relief of the kind sought by these plaintiffs.* As we hold that the case is not established on the merits, we do not find it necessary to consider this question.

> *Adjudication for the plaintiffs in the first case; in the second case, bill dismissed.*

The cases were submitted on briefs.

*C. H. Tyler, O. D. Young & B. E. Eames,* for plaintiffs.

*D. Malone,* Attorney General, *& F. T. Field,* Assistant Attorney General, for the Commonwealth.

---

* It was averred in the bill that the Commonwealth had refused to pay the amount of the assessment, that the collector of taxes of the city of Boston had sent to the plaintiffs bills for the amount of the first yearly apportionment thereof (the total amount of the assessment having been apportioned into ten payments) and, on information and belief, that the collector intended to proceed forthwith against the plaintiffs to enforce payment of the amount then due.   The prayers of the bill were for an adjudication that the Commonwealth should pay the entire assessment, and should be ordered to pay the amount then due and further amounts as they became due.