FIRST UNITARIAN SOCIETY OF IOWA, CITY, IOWA, Appel-
lant, v. CITIZENS SAVINGS & TRUST COMPANY, IOWA CITY,
IOWA, Appellee.

Conveyances:   INCUMBRANCES:   COVENANTS:   BREACH.   An   incum-
brance which amounts to a breach of covenant is a right in a
third person which diminishes the value of the land conveyed,
although it may not be inconsistent with the passing of the fee;
as judgments, taxes, mortgages and like liens.   But permanent
physical conditions which are apparent and irremediable, and those
conditions usually incident to a public improvement, are not within
a general covenant against incumbrances and do not constitute
a breach thereof.   Thus the mere existence of a public sewer five
or six feet under the surface of the land conveyed will not con-
stitute a breach of covenant against incumbrances.
Deemer and Gaynor, JJ., dissenting.

*Appeal from Johnson District Court.*—HON. R. P.
HOWELL, Judge.

FRIDAY, JUNE 7, 1913.

THIS is an action for damages for breach of covenant in
warranty deed.   The case was tried to the court without a
jury upon an agreed statement of facts.   There was a judg-
ment for the defendant, and plaintiff appeals.—*Affirmed.*

*Henry Negus* and *H. H. Griffiths,* for appellant.

*O. A. Byington,* for appellee.

EVANS, J.—The plaintiff holds its cause of action by
assignment.   Its assignor was the grantee in a warranty deed
executed to it by the defendant on December 14, 1907, and
which conveyed to it a certain lot 4 in Iowa City.   The deed

contains covenants of warranty which will be hereinafter set
out.   It was averred that the covenants were breached by the
existence of a public sewer traversing said lot to a depth of six
feet beneath the surface, which sewer had been used and main-
tained by the public for more than forty years and was still so
used and maintained.   It was averred that the plaintiff's
assignor was damaged thereby to the sum of $1,500.   The
answer admitted the assignment of the cause of action and the
existence of the warranty deed and the existence of the public
sewer, and denied all other allegations, and especially denied
that the existence of said sewer damaged plaintiff's assignor
or was in any way detrimental to the value of the lot.   In the
court below, the parties submitted the case to the court with-
out a jury upon the following agreed statement of facts:

   It is agreed as follows:   That the defendant was the
owner of lot four in block forty-four of Iowa City, Iowa,
and that on the 14th day of December, 1907, by its
authorized officers it conveyed said above-described prop-
erty by a warranty deed to the plaintiff.   The said
covenants of warranty being as follows:   'And we do
hereby covenant with the Iowa Association of the Unitarian
and other independent churches that we are lawfully seized
of said premises, that they are free from incumbrances,
that we have good right and lawful authority to sell and
convey the same, and we do hereby covenant to warrant
and defend the said premises against the lawful claims of
all persons whomsoever, and the grantors aforesaid hereby
relinquish all contingent right including rights of dower,
which they have in and to said last described premises.'
That at the time of executing said deed and of the convey-
ance of the said property, there extended across said lot
a certain public sewer, which sewer entered the lot about
sixteen feet west of the northeast corner thereof and ex-
tended diagonally southeast, passed out of said lot at a
point about sixty-four feet south of said northeast corner.
That said sewer had been in existence for many years and
was a public sewer of such a character that the public had
rights therein and the same could not be removed.   That
the top of said sewer is from five feet to five feet six inches

below the surface of the ground, and said sewer is about three feet wide and four feet deep on the inside and five feet and six inches wide on top.  It is agreed that the court shall determine from the said above facts whether the defendant is liable to the plaintiff for breach of warranty.  First Unitarian Society of Iowa City.  Citizens' Savings & Trust Co.

We think appellant's discussion in the briefs goes quite beyond the facts appearing of record.

Our consideration and discussion of the question presented must necessarily be circumscribed by the agreed statement of facts.  The incumbrance charged in this case is the public easement incident to the use and maintenance of the public sewer.

An easement may or may not be an incumbrance.  An "incumbrance" has been defined as "a burden upon the land depreciative of its value; such as any lien, easement, or servitude which though adverse to the interest of the landowner does not conflict with the conveyance of the land in fee."  10 Am. & Eng. Encyc. of Law, 361.  In *Barlow v. McKinley*, 24 Iowa, 69, it was defined as "right in a third person in the land in question, to the diminution of the value of the land, though consistent with the passing of the fee by deed of conveyance."  The trial court found that the easement in question was not an incumbrance within the meaning of the law.  This holding was concededly based upon our previous cases.  *Harrison v. Railway Co.*, 91 Iowa, 114; *Stuhr v. Butterfield*, 151 Iowa, 736.

The real question before us is therefore whether, under the stipulated facts, the doctrine of the cited cases warranted the judgment of the lower court in favor of the defendant.  Some of the authorities classify incumbrances as falling naturally into two general classes: (1) such as affect or relate to the title or to the record thereof; (2) such as affect or relate to the actual physical conditions upon the realty.  The first class is illustrated by lien of taxes, judgments, or mortgages.

As to such it is uniformly held that they are included in the covenant against incumbrances regardless of knowledge of the grantee. Those relating to physical conditions of the realty may come under a somewhat different rule. Whenever the actual physical conditions are apparent and are in their nature permanent and irremediable, they are sometimes held to have been within the contemplation of the parties in fixing the price and are deemed not to be included in a general covenant against incumbrances. The distinction in the two classes of incumbrances is recognized by many courts. In *Memmert v. Keene,* 112 Pa. 315, this distinction is discussed as follows:

Where incumbrances of the former class exist, the covenants referred to, under all the authorities, are broken the instant they are made, and it is of no importance that the grantee had notice of them when he took the title. *Cathcart v. Bowman,* 5 Pa. 317; *Funk v. Voneida,* 11 Serg. & R. (Pa.) 109 (14 Am. Dec. 617). Such incumbrances are usually of a temporary character and capable of removal; the very object of the covenant is to protect the vendee against them. Hence knowledge, actual or constructive, of their existence, is no answer to an action for a breach of such covenant. Where, however, there is a servitude imposed upon the land which is visible to the eye, and which affects, not title, but the physical condition of the property, a different rule prevails. Thus it was held in *Patterson v. Arthurs,* 9 Watts (Pa.) 152, that, where the owner had covenanted to convey certain lots free from all incumbrances, a public road, which occupied a portion of such lots, was not an incumbrance within the meaning of the covenant. This is not because of any rights acquired by the public, but by reason of the fact that the road, although admittedly an incumbrance, and possibly an injury to the property, was there when the purchaser bought, and he is presumed to have had knowledge of it. In such and similar cases there is further presumption that, if the incumbrance is really an injury, such injury was in the contemplation of the parties, and that the price was regulated accordingly.

To the same effect, see *Desvergers v. Willis,* 56 Ga. 515 (21 Am. Rep. 289); *Whitbeck v. Cook,* 15 Johns. (N. Y.) 483 (8 Am. Dec. 272); *Clark v. Mossman,* 58 Neb. 87 (78 N. W. 399); *Weller v. Trust Company* (Ky.), 64 S. W. 843; *Kutz v. McCune,* 22 Wis. 628 (99 Am. Dec. 85); *Scribner v. Holmes,* 16 Ind. 142; *Wilson v. Cochran,* 46 Pa. 229; *Huyck v. Andrews,* 113 N. Y. 81 (20 N. E. 581, 3 L. R. A. 789, 10 Am. St. Rep. 432); *Railway Co. v. Beeson,* 36 Neb. 361 (54 N. W. 557); *Railway Company v. Shepherd,* 39 Neb. 525 (58 N. W. 189).

To the foregoing must be added the further proposition that, where public improvements are adopted for the betterment of real estate within a district, such new physical conditions as are necessary and usually incident to such improvement are deemed ordinarily within the contemplation of purchaser and seller and are not deemed a breach of covenant against incumbrances. Such doctrine has been expressly applied by this court to highways and drainage ditches. *Harrison v. Railway Co., supra; Stuhr v. Butterfield, supra.*

All public improvement involves a certain community of interest in all real estate within its district. Such improvement is not available to one piece of property alone, and yet it is essential to its appropriate use and enjoyment. From its very nature it can not benefit one without benefiting many; and, as an incident to the mutual benefit, it lays also a mutual servitude upon all. The highways carved out of a farm bring such farm into connection with the entire highway system of the state. The drainage ditch cut through a farm confers upon such farm the benefit of a complete drainage system furnishing to it an outlet below for its own surface waters and subjecting it to incident servitude from above.

Is a public sewer such an improvement and betterment to real estate that it comes fairly within the operation of the doctrine announced? City property has need of sewer facilities. Abutting property is taxed therefor as for benefits received. These facilities can be acquired only by inclusion

in a sewer system. To become a part of such system is to receive its benefits and to be subject likewise to some degree of servitude. Can such incident servitude be deemed a breach of covenant against incumbrances?

It is argued by appellant that the doctrine of our cases above cited does not apply because the sewer was underground and not apparent to observation. This distinction might meet the argument of some of the cases. The doctrine of our own cases, however, has not been made to rest upon the fact that the incumbrance was apparent or known. This court had previously held, in *Barlow v. McKinley,* 24 Iowa, 69, that a railroad right of way operated as a breach of covenant though its existence was apparent and known. The *Harrison* case was put upon the broad and practical ground that public improvement and betterment which so benefits abutting property as to render it liable to assessment for the improvement ought not to be deemed ordinarily as depreciating its value. It recognized the fact that such betterment imposed, nevertheless, upon the benefited property a certain mutual servitude, and to that extent created an easement in a legal sense against all property within the benefited district. The holding was that such easement, however, was not ordinarily an incumbrance, because in its entirety it was beneficial and not detrimental to the value. The following excerpts are from the opinion in that case:

It will be observed that we are to meet a delicate question, and also one of great and very general importance to all parts of the state, from the fact that conveyances of land are generally with covenants against incumbrances, and very few of the number, which is immense, contain exceptions as to public highways. If the rule is to obtain in this state that such highways are incumbrances, against covenants of warranty, the effect will be to create almost numberless liabilities where none were thought to exist; for, with few exceptions, if any, conveyances have been made without an apprehension of such a rule, by either of the parties; and, as has been said in other states that have denied the rule, it 'would produce a

crop of litigation . . . that would be almost intermi-
nable.' Such considerations should not influence us to override
an established rule of law, and to deny to any party a vested
right; but they are important where a rule of law for the state
is to be settled upon authority, and is so doubtful that parties
acquiring rights may have done so under mistaken apprehen-
sions of what the rule should be. It is conceded that the
authorities are not uniform on the question. In *Prichard v.
Atkinson*, 3 N. H. 335; *Kellogg v. Ingersoll*, 2 Mass. 97;
*Haynes v. Young*, 36 Me. 557, and *Burk v. Hill*, 48 Ind. 52
(17 Am. Rep. 731), it is held that such highways are incum-
brances and a breach of such covenants. In *Desvergers v.
Willis*, 56 Ga. 515 (21 Am. Rep. 289) ; *Whitbeck v. Cook*, 15
Johns. (N. Y.) 483 (8 Am. Dec. 272) ; *Patterson v. Arthurs*,
9 Watts (Pa.) 152, and *Memmert v. McKeen*, 112 Pa. 315 (4
Atl. 542), the opposite rule is held. Both lines of authorities
have support from rulings on kindred questions, and nothing
less can be said, on authority, than that the question is one
of grave doubt. It should be said that some of the authorities
cited against the rule that such an incumbrance constitutes
a breach base the conclusion on a broader doctrine than that of
the rule applying simply to public highways, and hold that it
applies to other easements, where they are open, notorious, and
are, or may be presumed to have been, known to the vendee
when the purchase was made; as in the case of a right of way
for a railroad, when the road was in operation, and the ease-
ment created by it known to the grantee. In view of the rule
adopted in this state—that knowledge of the easements will not
exclude it from the operations of the warranty—if we are to
make a public highway an exception to the rule, it must be on
other grounds, or at least the conclusion should be aided by
other reasons. . . . In general, easements are of such
nature that they become incumbrances, in the sense that they
are a burden or detriment to the servient estate; because there
is nothing in their nature from which the law will presume
that they were created in the interest, or for the betterment,
of the estate. It is in this view that it has sometimes been said
that all easements are incumbrances, and this, as we think,
has led, in some cases, to the statement of a broader rule than
either public or private interests demand. No easement should
be regarded as an incumbrance to an estate, which is essential
to its enjoyment, and by which its value is presumably en-
hanced. Nothing in the record indicates that the highways in

question do not bear the relation to the land conveyed to the plaintiff that public highways generally do to agricultural lands; and we have no hesitancy in saying that public highways are not depreciative, but, on the contrary, they are highly appreciative, of the value of the lands on which they constitute an easement, and are a means without which such lands are not available for use, nor sought after in the markets. . . . By this system of highways the landed estates become mutually servient, and in such a way that the easements are mutually advantageous and the respective land values enhanced thereby. Such an easement is not an incumbrance. . . . We may say that we make the distinction on the line of what the law will presume to be an incumbrance, in the sense that it is a damage to the estate made servient to the easement. Other easements to which our attention has been called, or which we have been able to consider, are not such that the law will presume them as attaching to an estate, at the instance of the owner, and for its advantage. The consequences of a rule that would hold to a technical liability at law in such cases, and remand parties to proceedings in equity to reform the thousands of conveyances that would fall within its operation, can be better imagined than expressed; and we feel that the announcement of a rule of law decisive of the rights of parties, without such litigation, is correct in principle and in accord with public and private interests.

In the *Stuhr* case, *supra,* the same doctrine of mutuality of benefit and burden was applied to a drainage ditch. The ditch in question had not been cut nor the land appropriated in a physical sense at the time of the execution of the warranty sued on in that case. The doctrine of the *Harrison* case is there fully discussed and reaffirmed, and we need not repeat the discussion. It will be noted, also, that the discussion in the *Stuhr* case is made to apply not only to open ditches, but also to covered tile drains. Nothing less would be consistent.

In a practical sense, it is hardly conceivable that a purchaser of real estate underlaid with covered tile drains could deem himself damaged thereby as for breach of covenant against incumbrances. Such tile drains are usually laid at great expense and to the great improvement of the property.

Necessarily such benefit has its incident servitude and perhaps inconvenience. The landowner must necessarily adapt his use of the land to the use and location of the tile drains. He can not sink a well or dig a post hole over such drain. If he put a structure upon such ground, he must protect his tile against undue weight. And if he excavate a basement he must take account of, and make provision for, his tile drain. This is a burden incident to benefit. Is this argument fairly applicable to a public sewer? It is urged that a public sewer is not a benefit to the particular land through which it passes. But it is a matter of common knowledge that proximity to a sewer is one of the first requisites of city property and one of the first conditions to city value. It is true, as argued by appellant, that public sewers are usually laid in streets and alleys. It is also true that it is sometimes a practical necessity to lay them along the course of the ravines because of the topography of the ground, and because their expense might otherwise be prohibitive. The very selection of the cheaper course is in itself in the interest of the property owner who has need of sewer' connection and must needs pay for the improvement. It is further argued that the sewer should be deemed an incumbrance because of the statutory provisions for the condemnation of land for such purposes and for the assessment of damages therefor. But similar statutory provisions are made for condemnation of land for public highways and for public ditches and tile drains. In all such cases the constitutional prohibition against the consideration of benefits is applicable, as well as the prohibition against the taking of private property without compensation. Turning to the stipulation of facts before us, we discover nothing therein to take the case out of the operation of the doctrine of the cases here considered. No facts of a special nature are made to appear. Nor does it appear that the plaintiff suffered any damage in fact, unless damage is to be presumed from the mere existence of the sewer. No question of deceit or false representation or mutual mistake is involved. We have before us only the cold

question whether the mere existence of a sewer five or six feet under ground necessarily constitutes a breach of covenant against incumbrance.

We think the holding of the trial court is in accordance with our previous cases here considered, and its judgment is therefore—*Affirmed*.

DEEMER, J. (dissenting).—In view of the importance of the legal principle involved, it is unfortunate that the case has been submitted in the manner it has, for I fear that this has unconsciously led to an announcement of legal doctrines which might not otherwise have been pronounced—doctrines which I think are a wide departure from previous cases, and from well-settled rules and principles of law formerly imbedded not only in the jurisprudence of this country but of England as well. I am led to believe that the case was submitted to the district court simply to secure an opinion as to whether or not a public or private sewer, running across private property, is or may be an incumbrance, which will constitute a breach of warranty against incumbrances, or for the quiet enjoyment of the property conveyed. The covenant in plaintiff's deed is as broad as it could be made, and the deed contains no reservation or exceptions. It will be observed that, after giving the description of the sewer which crosses the lot, it is expressly provided in the stipulation of facts that the question to be decided was whether or not defendant is liable to the plaintiff for breach of covenant or warranty.

Mark, the court was not to determine the amount of the damages, but whether or not there was any liability to the plaintiff for breach of warranty. If we find that the district court erroneously decided this question, then, in my opinion, we should reverse the case and remand it for a determination as to the amount of damages and not assume as a matter of law, as the majority do, that no damages could arise to plaintiff by reason of the presence of the sewer which would be sufficient to sustain an action for breach of covenant.

The rule that we do not reverse for failure to award nom-

inal damages is not applicable to the case; for the parties did not submit the question as to the amount of damages at all, and nothing is said in the stipulation regarding that matter. Plaintiff did not attempt to state the amount of damages claimed to have been suffered by it, and defendant did not claim that the sewer was a benefit to the property, save as any sewer may be so considered.

The nature of the sewer is not shown, save that it is a public one, of large size, set five feet to five feet and six inches in the ground, five feet and six inches wide on top, and three feet wide, and four feet deep, on the inside. It is evidently not the ordinary round sewer; and, whether a sanitary or storm sewer, or one to carry off the water from the streets and buildings, does not appear, save by the merest inference. . . . It was not built in the street, as most sewers are, and was evidently an outlet, over the land in question, for some kind of a system of drainage or sewerage, procured either by purchase or condemnation under section 795 of the Code or some similar section of previous Codes. No one would contend that private property could be entered and taken, even for public use, without compensation to the owner.

Ordinarily sewers are laid in the city streets, and, as no additional servitude is created thereby, adjoining or abutting property owners may not complain of them. Indeed, in such cases they are thought to be a benefit to the property, and assessments may be made to meet the cost thereof. But, in finding an outlet over private property, no such rule exists, no matter what the nature of the sewer. Indeed, the cost of making this outlet can not be taxed against the property taken, but is added to the cost of the improvement and taxed up against property abutting on the streets in which the sewer is laid. Code, section 795.

The fair inference from the description of this sewer is that it is a storm sewer, although, to my mind, this makes no difference with the legal principle involved.

Again it does not appear how the right to pass over the

property was obtained, that is, whether through purchase or by condemnation; but, however acquired, it is conceded that the same is public in character, that the public have rights therein, and that the same can not be removed.

Conceding, then, that the city either owns the property upon which the sewer lies, or that it has a permanent easement over the lot for the sewer, it follows that the city authorities had the right, at any time, to go upon the lot to make repairs to the sewer, to clean it out, and to see that it was properly maintained. This right followed as of law, even though nothing but an easement was created over the lot. Such is the universal holding of the authorities: *Prescott v. White,* 21 Pick. (Mass.) 341 (32 Am. Dec. 266); *Prescott v. Williams,* 5 Metc. (Mass.) 429 (39 Am. Dec. 688); *Doane v. Badger,* 12 Mass. 65; *Morrison v. Marquardt,* 24 Iowa, 68.

That the right of the third person to pass upon or over land, to dig thereon, or to, in any manner, remove the soil, constitutes a breach of a covenant of warranty in a deed for quiet enjoyment, is, to my mind, too clear for argument, and it is so held in many cases. See *McGowan v. Myers,* 60 Iowa, 256; *Mitchell v. Warner,* 5 Conn. 497; *Blake v. Everett,* 1 Allen (Mass.) 248; *Wetherbee v. Bennett,* 2 Allen (Mass.) 428; *Swift v. Crocker,* 21 Pick. (Mass.) 241; *Johnson v. Knapp,* 146 Mass. 70 (15 N. E. 134); *Cotting v. Commonwealth,* 205 Mass. 523 (91 N. E. 900); *Patterson v. Freihofer,* 215 Pa. 47 (64 Atl. 326).

The majority give a definition of an incumbrance with which I do not disagree; but, after giving the definition they proceed to hold, as I understand it, that there is an easement, which ordinarily would be an incumbrance upon and over plaintiff's property; but that this easement is, as a matter of law, a benefit rather than an injury, and that, no matter what the testimony may show, as to actual damages, the law conclusively assumes that there were no damages to the property by reason of the presence of the sewer.

In this connection, I can not do better than quote from a leading case, upon this subject, as applied to easements of the character mentioned in *Wetherbee v. Bennett,* 2 Allen (Mass.) 429, the Supreme Court of Massachusetts said:

These exceptions can not be sustained. The action is upon the breach of a covenant against incumbrances in a conveyance of land. The incumbrance was a right of way over the land, which subsisted at the time of the conveyance and for some time after. The defendant contended that the evidence showed that the plaintiff had never been disturbed in the enjoyment of his estate by any user of the way, and that the right of way had been extinguished without expense, and asked that the jury should be instructed to return a verdict for nominal damages only; but the judge declined to give these instructions. It does not follow from these facts that no actual damages had been sustained. While the right of way lasted, the plaintiff was precluded from using the part of the land covered by the way as fully as he otherwise might have done. He could not set a tree, or a post, or a building upon it; or inclose or cultivate it; or sell or lease it to any person to whom such an incumbrance would be objectionable. It was an apparently permanent subtraction from the substance of the estate.

In *Butler v. Gale,* 27 Vt. 739, Chief Justice Redfield said:

. . . In this country, where our tenures are strictly allodial, we are very much accustomed to consider that, if another really possesses any rights in our land, it is so far forth an incumbrance upon our title. Whether it be small or large in amount, whether it be a mortgage or a right to flow a portion or all of the land, for a shorter or longer period during the year, or to draw water from a well or spring, or to water cattle at a brook, or to pass across the land on foot, or with teams, or to draw wood in winter only across the land, or to build and maintain a railway perpetually, or a highway, is certainly of no importance in determining the mere technical question of incumbrance or no incumbrance. And it can make

no difference whether his right is notorious or not. If the question of an incumbrance were to be determined by its notoriety, or, what is the same thing, by its being known to the purchaser, it must, to preserve consistency, be extended to all incumbrances. And, in that view, the grantee could not recover upon his covenant for paying a mortgage which he knew existed at the time of his purchase. But the contrary is perfectly well established. And in regard to these rights of way, if they existed only in prior grant, and were not known to the grantee at the time of purchase, no one could claim that they did not constitute a breach of the covenant against incumbrances.

Indeed, according to all the cases at my command, the most that can be said is that, in cases of incumbrance by easements over land, the question is not one of law for the court, but of fact for a jury. They may be of considerable damage, or very inconsiderable in character, and the amount thereof is for a jury. See Opinion by Parsons, Chief Justice, in *Kellogg v. Ingersoll*, 2 Mass. 97. Also, *Hubbard v. Norton*, 10 Conn. 422; *Gilbert v. Bulkley*, 5 Conn. 262 (13 Am. Dec. 57) ; *Morgan v. Smith*, 11 Ill. 194; *Richmond v. Ames*, 164 Mass. 467 (41 N. E. 671) ; *Mackey v. Harmon*, 34 Minn. 168 (24 N. W. 702) ; *Kellogg v. Malin*, 62 Mo. 429.

It is hornbook law that an owner of real estate owns from the highest heavens to the center of the earth and our fee-simple titles are allodial in character. That is to say, they are free and absolute and held of no superior. Suppose, now, that the owner of this lot wished to bore for coal or oil upon his lot, to dig a well over this sewer, or to erect a building or a church, and that he wished to excavate below the sewer for his foundation walls, or to make a basement; would any one contend that his absolute right to do so would not be interfered with by the presence of this sewer? As the property was purchased by a church, it is evident that this sewer may be a decided disadvantage, rather than a benefit to the owner of the land. Not only has another a right to enter upon its premises for repairing, cleaning, or maintain-

ing the sewer, but plaintiff must not, in any way, interfere with or destroy that sewer on penalty of paying damages therefor, if not of being restrained by injunction from in any way interfering therewith.

These illustrations are not forced or strained, but, to my mind, perfectly legitimate in arriving at a proper solution of the case. Although the rule for this state is that knowledge on the part of the grantee of an incumbrance against the property does not deprive him of the right to recover for breach of covenant, the majority quote the Pennsylvania rule as if it had some applicability to the case. The so-called Pennsylvania rule has not only been distinctly repudiated by this court in many cases, but it has been departed from by the Pennsylvania court itself in recent cases. In *Patterson v. Freihofer,* 215 Pa. 47 (64 Atl. 326), decided in 1906, that court said. "When one protects himself against an incumbrance by a positive covenant that the property is to be conveyed to him clear of all such incumbrance, he is entitled to the benefit of his contract, whether he had knowledge of the existence of the incumbrance or not." This was said with reference to the use of cesspools and privy wells. Again, in *Evans v. Taylor,* 177 Pa. 286 (35 Atl. 635, 69 L. R. A. 790), the same court announced the same rule. There is no room for dispute as to what our own cases hold. I here cite them without quotation: *Billingham v. Bryan,* 10 Iowa, 317; *Van Wagner v. Van Nostrand,* 19 Iowa, 422; *Barlow v. McKinley,* 24 Iowa, 69; *Gerald v. Elley,* 45 Iowa, 322; *McGowen v. Myers,* 60 Iowa, 256; *Specht v. Spangenburg,* 70 Iowa, 488; *Flynn v. Coal Co.,* 72 Iowa, 738; *Yancey v. Tatlock,* 93 Iowa, 386; *Pierce v. Houghton,* 122 Iowa, 477; *Doyle v. Emerson,* 145 Iowa, 358; *Harwood v. Lee,* 85 Iowa, 622; *Kostendader v. Pierce,* 37 Iowa, 645. There has been no departure from this rule, so many times maintained.

I can not myself see any distinction between an incumbrance which is of record, of which all persons must take notice, and one which is visible to the naked eye, but which

the parties may or may not have seen. Will the next step be to say that a covenant of warranty does not cover an incumbrance of record? Much confusion will be introduced by a rule which makes the right of action depend upon knowledge. One holding title against which there is an incumbrance may resort to any warranty in his chain of title made after the incumbrance arose. Now, suppose some remote grantor was chosen as a defendant and he could show that, while plaintiff did not know of the incumbrance, his immediate grantee, or some more remote grantee, did; would this be a defense to suit? I have always understood that the reason why one is so tenacious in insisting upon a warranty deed is for the reason there may be, or he thinks there is, some incumbrance against the land, and often he takes it for the very reason that there is an apparent incumbrance. Is he to be defeated in his action of covenant because he knows of this incumbrance? I think not.

Moreover, this question of knowledge of a physical incumbrance defeating an action for breach of covenant has been distinctly negatived in many of our cases where the easement was known to both grantor and grantee. See *Flynn v. Coal Co.*, 72 Iowa, 738; *Barlow v. McKinley*, 24 Iowa, 69; *McGowen v. Myers*, 60 Iowa, 259; *Van Wagner v. Van Nostrand*, 19 Iowa, 422. In each of these cases there was an open and apparent easement on the land, and we expressly disapproved of the Pennsylvania and Wisconsin rule—the rule adopted by the minority of the courts—and expressly and definitely held that knowledge of such easements would not defeat the action. Courts and text writers generally disapprove of the rule announced by the majority upon this proposition. See Jones on Real Property, sections 861 et seq., 873, 882, 886, 910; Rawle on Covenants for Title, sections 79, 88, 191; Tiffany on Real Property, section 397; Tiedeman on Real Property, section 853; 2 Warvelle on Vendor, pages 992-998; 8 Am. & Eng. Ency., pages 123, 124, 125; 11 Cyc., page 1066. If our previous cases are to be

overruled, we should do so squarely, and not leave the matter to mere inference.

Coming now to the question of sewers, drains, etc., the cases, without exception, so far as I have been able to discover, hold that they are incumbrances, and the English courts have recently established the same rule.

In *Pemsel v. Tucker* (1907) 2 Ch. 191 (97 L. T. N. S. 71 P. J. 547), it was held that a public sewer, running under property sold, constituted a defect in the title as it was vested in the public authorities. In the instant case, it is conceded that the sewer in question is a public sewer, and it must have been acquired either by grant or condemnation.

In *Cotting v. Commonwealth*, 205 Mass. 523 (91 N. E. 900), the Supreme Court of Massachusetts held that a sewer constitutes an incumbrance on the land; and in *Johnson v. Knapp*, 146 Mass. 70 (15 N. E. 134), the same court held that a pipe to convey water across land is an incumbrance.

In *Smith v. Sprague*, 40 Vt. 43, the court of that state held that a private drain and the accompanying right to enter and clean the same constituted a breach of covenant against incumbrances. The principle for which I contend was laid down in an early case in Massachusetts. *Kellogg v. Ingersoll*, 2 Mass. 97, from which I quote the following words of Parsons, C. J.:

If the public town road, described by the plaintiff in his assignment, is no legal incumbrance of the land sold, the breach is not well assigned. But the court is well satisfied that the road, as there described, is an incumbrance of the land sold. It is legal obstruction to the purchaser to exercise that dominion over the land to which the lawful owner is entitled. An incumbrance of this nature may be a great damage to the purchaser, or the damage may be very inconsiderable, or merely nominal. The amount of damages is a proper subject of consideration for the jury who may assess them, but it can not affect the question whether a public town road is, in legal contemplation, an incumbrance of the land over which it is laid.

In *Huyck v. Andrews,* 113 N. Y. 81 (20 N. E. 581, 3 L. R. A. 789, 10 Am. St. Rep. 432), the Supreme Court of New York said:

. . . . We think the safer rule is to hold that the covenants in a deed protect the grantee against every adverse right, interest, or dominion over the land, and that he may rely upon them for his security. If open, visible, and notorious easements are to be excepted from the operation of covenants, it should be the duty of the grantor to except them, and the burden should not be cast upon the grantee to show that he was not aware of them. The security of titles demands that a grant made without fraud or mutual mistake shall bind the grantor according to its written terms. It should not be incumbent upon the grantee to take special and particular covenants against visible and apparent defects in the title, or incumbrances upon the land, but it should be incumbent upon the grantor, if he does not intend to covenant against such defects and incumbrances, to except them from the operation of his covenants. The distinction which is attempted to be made between incumbrances which affect the title and those which affect the physical condition of the land conveyed is quite illusory and unsatisfactory. Easements not only affect the physical condition of the land, but they affect and impair the title. The owners of them have an interest in and dominion over the servient tenement which frequently may largely impair its usefulness and value.

In *Prescott v. Trueman,* 4 Mass. 629 (3 Am. Dec. 246), it is said:

On these principles we are of opinion that every right to, or interest in, the land granted, to the diminution of the value of the land, but consistent with the passing of the fee of it by the conveyance, must be deemed in law an incumbrance. We say consistent with the passing of the fee of the land by the conveyance, because, if nothing passed by the deed, the grantee can not hold the estate under the grantor. Thus a right to an easement of any kind in the land is an incumbrance. So is a mortgage. So also is a claim of dower, which may partially defeat the plaintiff's title, by taking

a freehold in one-third out of it.  And for the same reason, a paramount right, which may wholly defeat the plaintiff's title, is an incumbrance.  It is a weight on his land, which must lessen the value of it.

In *De Mars v. Koehler,* 62 N. J. Law, 203 (41 Atl. 720, 72 Am. St. Rep. 642), the Supreme Court of New Jersey said:

Prof. Greenleaf declares that a breach of the covenant against incumbrances is shown when the proofs establish that a 'third person has a right to or an interest in the land conveyed, to the diminution of the value of the land, though consistent with the passing of the fee by the deed of conveyance.' 2 Greenl. Ev., sec. 242.  This definition of 'incumbrance' is substantially that given by Chief Justice Parsons in *Prescott v. Trueman,* 4 Mass. 627 (3 Am. Dec. 246).  It was approved in *Mitchell v. Warner,* 5 Conn. 497, and adopted by Chief Justice Green in *Carter v. Denman,* 23 N. J. Law, 260-272. The diminution of value which is thus made a test of an incumbrance is not, however, to be understood as limited to cases where the thing granted is, by reason of some outstanding right or interest in a third person, of less pecuniary worth, but also extends to and embraces cases where the grantee, by reason of such an outstanding right or interest, does not acquire  .  .  .  the thing granted which the grant apparently gives, but is or may be deprived thereby of the whole or some part of its use or possession.  The diminution of pecuniary value is important in the admeasurement of damages for the breach of this covenant, but does not form the test whether an outstanding right or interest is an incumbrance or not.  If the thing granted be, or be liable to be, diminished by the existence of an outstanding right or interest, so that the grantee does not acquire the complete dominion which the grant purports to convey, then, although the diminution of pecuniary worth may not appear, and the damages may be only nominal, such right or interest is an incumbrance.  .  .  . Knowledge of its existence can not alter its character as an incumbrance.  The land granted is or may be thereby diminished so that the grantee does not acquire that use and possession which the deed purported to grant.  Mr. Rawle, conceding that, if there be a real incumbrance, the purchaser's knowledge

of its existence will furnish no defense to an action on this covenant, ingeniously suggests that such knowledge may have a material bearing in determining what was the subject-matter of the contract. Rawle, Cov. 95, 96. With equal ingenuity the opinion below denies the right to recover upon this covenant because such an incumbrance, known to the grantee, is not within its terms, and consequently no breach of the covenant. With great respect, I deem the reasoning specious and the conclusion insupportable; for knowledge of the existence of an incumbrance not only does not destroy its inherent character as an incumbrance, but may and often does lead to the purchaser's requiring the grantor to protect him by covenants. *Smith v. Lloyd,* 29 Mich. 382. When a covenant is made against all incumbrances, without exception, knowledge of the existence of one incumbrance can not take that incumbrance out of the general terms of the covenant, unless such was the intent of the parties. But knowledge alone does not prove such intent, for a contrary intent is consistent with it. Proof of knowledge, or other proof of the intent of the parties, that a particular incumbrance should be excepted from the general terms of the covenant, could only be admitted by a violation of the canon of evidence which forbids parol proof to vary the terms of a written contract. It results that a grantor who fails to except from his covenant against incumbrances one which is known to the grantee can not defeat recovery upon that covenant by proof of such knowledge. The grantee is not compelled to require for his protection a special covenant against the known incumbrance, but may rely on the general and unrestricted covenant against all incumbrances. . . . The general rule is that the right of action on the covenant against incumbrances arises upon the evidence of the incumbrance, irrespective of any knowledge on the part of the grantee, or of any eviction of him, or of any actual injury it has occasioned him, so that if he has not paid off or bought in the incumbrance, he is entitled at least to nominal damages. 2 Greenl. Evidence, sec. 242; 2 Washb. Real Prop. 707; *Carter v. Denman, supra; Townsend v. Weld,* 8 Mass. 146; *Hovey v. Newton,* 7 Pick. (Mass.) 29; *Harlow v. Thomas,* 15 Pick (Mass.) 66; *Batchelder v. Sturgis,* 3 Cush. (Mass.) 201; *Spurr v. Andrew,* 6 Allen (Mass.) 420; *Flynn v. Bourneuf,* 143 Mass. 277 (9 N. E. 650, 58 Am. Rep. 135); *Rickert v. Snyder,* 9 Wend. (N. Y.) 416; *Smith v. Lloyd, supra; Edwards v. Clark,* 83 Mich. 246 (47 N. W. 112, 10 L. R. A.

659) ; *Hubbard v. Norton,* 10 Comm. 431; *Prichard v. Atkinson,* 3 N. H. 335; *Van Wagner v. Van Nostrand,* 19 Iowa, 422; *Barlow v. McKinley,* 24 Iowa, 69; *Long v. Moler,* 5 Ohio St. 271.

In *De Rochemont v. B. & M. R. R. Co.,* 64 N. H. 500 (15 Atl. 131), the Supreme Court of New Hampshire said:

. . . A way, whether public or private, is an incumbrance upon land. *Prichard v. Atkinson,* 3 N. H. 335; *Haynes v. Stevens,* 11 N. H. 28. It is a legal obstruction to the exercise of that dominion over the land to which the lawful owner is entitled. *Kellogg v. Ingersoll,* 2 Mass. 101; *Blake v. Everett,* 1 Allen (Mass.) 248; *Wetherbee v. Bennett,* 2 Allen (Mass.) 428; *Butler v. Gale,* 27 Vt. 742; *Hubbard v. Norton,* 10 Conn. 422. The plaintiffs, having conveyed to the railroad with covenants of warranty against incumbrances, are estopped to deny the truth of the covenants that the premises are free from any incumbrances except what are reserved in the deed, and consequently they are estopped to claim damages for the obstruction of a way which they have covenanted does not exist. *Wark v. Willard,* 13 N. H. 389, 395; *Gotham v. Gotham,* 55 N. H. 440; *Fletcher v. Chamberlin,* 61 N. H. 438, 447, 478.

In appeal of *Edmunds, Ex'r,* 8 Atl. 31, the Supreme Court of Pennsylvania held a party wall an incumbrance, and the same rule obtains in many other states.

In *Johnson v. Knapp,* 146 Mass. 70 (15 N. E. 134), water pipes, running across a lot of land, were held to be incumbrances.

*Stuhr v. Butterfield,* 151 Iowa, 736, is not an authority against the propositions for which I contend. The drainage ditch which, in that case, was held not to be an incumbrance, was over land which was within a drainage district, and by reason of that fact it had already been adjudicated that the lands were benefited by the improvement. In the case at bar, there is no showing that the sewer in question was any part of any system of drainage, was ever included in any

sewerage district, that it was a sanitary sewer, or that any part of the cost thereof had been taxed against abutting property. There never was any finding that the lot, which it crossed, was benefited thereby, and nothing in this record to show that plaintiff could, or would be permitted to, use it for any purpose whatever. It may have been a storm sewer, which plaintiff would not have been permitted to use for sanitary purposes, or it may have been a sanitary sewer, but, if the latter, it is not shown to be a part of any sewer system constructed by the city. *Prima facie,* such an easement, over plaintiff's lot, is an incumbrance, and this *prima facie* showing is not overcome by any testimony in the case. It is assumed, without proof, that it was a benefit to the property, upon the theory that it drained it out in some manner, without any showing that it needed any kind of drainage or that it was a sanitary sewer, with which plaintiff might make connection, should it see fit to do so. There is no proof that it is a sanitary sewer; and, if it was, there is no showing that plaintiff may not reach the sewer in the street in front of its lot, where such sewers are usually laid, with less trouble and expense than on its lot. The sewer could not have been laid across plaintiff's lot without compensation, and, if a private sewer, the land could not have been condemned for such an improvement. The sewer may manifestly interfere with building operations, for, if a heavy wall is to be constructed over it, the wall must have support, and this will cause extra expense; and, in the end, it may not be in such position that it can be used for drainage or sewerage purposes. When sewers are laid in the street, as they usually are, they do not interfere with building operations, and in no way interfere with the unrestricted dominion which the owner has over his property. That a sewer laid across a private lot does interfere with such dominion is too clear for argument, and we are not justified, I think, in assuming that this restriction, instead of being a damage, is a real benefit to the lot.

It should not be forgotten, in this connection, that the right to locate underground drains through the land of another, except when the public health requires it, is denied in previous cases decided by this court. *Fleming v. Hull,* 73 Iowa, 598; *Patterson v. Baumer,* 43 Iowa, 477. And this is true, notwithstanding such drain may be of benefit to the land in giving it drainage which it did not have before. Save as the law authorizes the establishment of drainage districts, one man has no right to force his neighbor to put in a drain or tile for the mutual advantage of both, or to go upon his neighbor's land, without his consent, to put in a tile line to connect with his own, in order that both places may be benefited.

On the question of benefits, I can not refrain from referring to two of our cases, which seem to me to be analogous. In *McGowen v. Myers,* 60 Iowa, 256, the owner of a lot conveyed a part of it, reserving a stairway, which was to be built and used in common between the building erected on his part of the lot and the part conveyed and for the mutual benefit of the owners of both lots. Afterwards defendant in the case became the owner of the adjoining building and conveyed it, by deed of general warranty, to the plaintiff. Plaintiff brought action for breach of covenant, and it was held that the right to use the stairway in common was an easement and an incumbrance and that defendant was liable on his covenants. The same rule was also announced in *Meyers v. Munson,* 65 Iowa, 423. These cases are authority for several propositions in the case. The first is that parol evidence is not admissible to show that the parties did not regard the easement as an incumbrance; second, that knowledge of the physical easement on the part of the grantee was no defense; and, third, that even though the easement was for the joint benefit of grantor and grantee, still there was a breach of covenant for which damages might be recovered. All that could possibly be claimed in the instant case is that the easement might be for the joint benefit of the

original parties or their grantees—that is, that it was for the benefit of the city, as well as to the lot owner—but, under the rule heretofore announced, and never since departed from, such benefit will not defeat an action for breach of covenant of warranty.

I can not subscribe to the doctrine that knowledge on the part of the grantee of an incumbrance which relates to the physical condition of the realty conveyed deprives him of a right of action for breach of covenant of warranty. Such rule is contrary to the great weight of authority and in conflict with so many of our own cases that they should not be overruled by indirection. The text writers generally condemn the doctrine as wrong on principle and without general support. Again, the announcement of such doctrine will tend toward uncertainty and confusion. Suppose the grantee is a nonresident and has not seen the property, or, if a resident, has never been upon the property, or suppose that, as in this case, the sewer is five or six feet underground with nothing to indicate that a sewer runs across the lot; must the grantee dig down to see if the sewer runs across the lot, instead of out in the street, where he may well suppose it to be? What are the rules for such cases? And suppose a remote grantor is selected as a party defendant and he can show that although plaintiff, a remote grantee, did not know of the incumbrance, his defendant's immediate grantee did. Will this be a defense to the suit? Again, suppose a purchaser never learns of the sewer across his lot and makes his connections with one in the street and never gets any benefit from the one across his lot; must he bear the burden of the one across his lot?

*Harrison v. Railroad Co.*, 91 Iowa, 114, relied upon by the majority, is not in point. In that case it is said:

. . . In view of the rule adopted in this state—that knowledge of the easement will not exclude it from the operations of the warranty—if we are to make a public highway an exception to the rule, it must be on other grounds, or at least

the conclusion should be aided by other reasons. . . . An 'incumbrance' is defined to be 'a burden upon land depreciative of its value, such as a lien, easement, or servitude, which, though adverse to the interest of the landowner, does not conflict with his conveyance of the land in fee.' 10 Am. & Eng. Encyclopedia of Law, 361; 2 Greenl. Evidence, sec. 242; *Chapman v. Kimball,* 7 Neb. 399; *Carter v. Denman,* 23 N. J. Law, 260. In *Prescott v. Trueman,* 4 Mass. 627 (3 Am. Dec. 246), the foregoing definition is given in substance, and it is there said: 'It is a weight on land, which must lessen the value of it.' It will perhaps be well for us to treat these definitions as not casting the burden on a grantee to show affirmatively, in addition to the easement, that it is an incumbrance, in the sense of its being depreciative of the value of the land, and, instead, to give him the advantage of what the law will assume from the existence of an easement.

This case announces two propositions: First, that knowledge of the incumbrance is no defense; and second, that it is not incumbent on the grantee to show affirmatively that, in addition to the easement, it is an incumbrance in the sense of being depreciate of the value of the land. Assuming these rules to be true, I find nothing in the statement of facts, on which the instant case was tried and determined, which shows or tends to show that the sewer was made to benefit the lot in question or that it is in fact any benefit thereto. It is assumed that because it is called a public sewer it is some benefit to the property. But that fact depends, not upon the name given the easement, but upon whether or not it was a benefit to the property across which it passed.

Ordinarily sewers are not so constructed, and, when they are, compensation must be made the owner. There must be some proof, as I think that this sewer was constructed pursuant to some plan to benefit the lot through which it passed, before any presumption will arise that it did so benefit the land. I can conceive how all property within a drainage district may be presumed to have been benefited, as in *Stuhr v. Butterfield, supra.* But I am not convinced that a public sewer, running across a private lot,

not shown to have been a part of any sewer system, and not constructed to benefit the lot itself, is presumptively a benefit to the lot. A private drain running from my land, through the land of my neighbor, may benefit both; but I doubt if the law would compel my neighbor to let me run a tile across his land on the theory that it will be beneficial to him, when done. For a much stronger reason, one can not construct a tile or sewer over the land of another which does not need such sewer or tile and is in no manner benefited thereby, even with express authority from the Legislature.

The only excuse for this dissent is due to the thought that we are introducing new doctrines, which may arise to trouble us in the future, and I especially dissent from the propositions that knowledge of an incumbrance, whether it be physical or of record, is any defense to an action for breach of covenant; that a large public sewer, no matter whether storm or sanitary, running across a private lot, is presumptively beneficial, and from the thought that without any proof it will be presumed that such a sewer, although not shown to be a part of any system or necessary in any way to the enjoyment of the property through which it runs, is a benefit thereto rather than injury.

On the whole, I think the trial court was in error in dismissing the case, and I would reverse, with instructions to take testimony on the question of damages.

GAYNOR, J., joins in dissent.